**UNITED STATES of America, ex rel., Larry HOOVER, et al., Petitioners-Appellees,**

v.

**Gayle FRANZEN, Director, Illinois Department of Corrections, Louis Brewer, Warden, Stateville Prison, Respondents-Appellants.**

No. 80–2469.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1981.

Decided Jan. 12, 1982.

---

Jonathan C. Moore, Asst. U. S. Atty., for petitioners-appellees.

Patricia J. Bornor, Chicago, Ill., for respondents-appellants.

Before SPRECHER, Circuit Judge, MARKEY,* Chief Judge, and CUDAHY, Circuit Judge.

---

* Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

CUDAHY, Circuit Judge.

This appeal arises from the transfer of ten inmates from state custody at Stateville prison, an Illinois prison in Joliet, Illinois (Stateville), to federal custody at the Metropolitan Correctional Center (MCC) in Chicago pursuant to 18 U.S.C. § 5003.

I.

█ The inmates (petitioners) brought these petitions for habeas corpus relief against both federal and state custodians. The petitions alleged that the transfer violated their rights to due process under the fifth and fourteenth amendments, their statutory rights under Title 18 U.S.C. §§ 4001(a), 5003 (1976) as interpreted in *Lono v. Fenton*, 581 F.2d 645 (7th Cir. 1978) (en banc),[1] and article I, section 11 of the Illinois Constitution, which provides, "No person shall be transported out of the state for an offense committed within the state."[2] The transfer from Stateville to the MCC was the first step in the transfer of eight of the petitioners to federal prisons outside of Illinois.[3] Petitioners Larry Hoover and Herbert Stephens were to remain incarcerated in Illinois in the federal prison at Marion.

The district court granted relief for the eight petitioners who were to be transferred to federal prisons outside of Illinois. In affording relief, the district court relied on the state constitutional claim asserted by petitioners, reasoning that under the doctrine of pendent jurisdiction set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), it could entertain the state constitutional claims and should reach those claims before reaching the federal constitutional claims. The district court concluded that the plain language of the Illinois Constitution prohibited the transfer of the petitioners to prisons outside of Illinois. Therefore, the district court granted writs of habeas corpus as to these eight petitioners.

As to petitioners Hoover and Stephens, who were to be transferred to the federal prison at Marion, the district court held that the Illinois Constitution provided no relief, its provisions being limited to the prohibition of out-of-state transfers only. However, the district court held that on the basis of our decision in *Lono v. Fenton*, 581 F.2d 645 (7th Cir. 1978) (en banc), section 5003(a) required that a hearing be held to determine whether a need for specialized treatment existed to justify Hoover's and

---

1. 18 U.S.C. § 4001(a) (1976) provides:
   No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress.
   18 U.S.C. § 5003(a) (1976) provides:
   The Attorney General, when the Director shall certify that proper and adequate treatment facilities and personnel are available, is hereby authorized to contract with the proper officials of a State or Territory for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or Territory: *Provided*, That any such contract shall provide for reimbursing the United States in full for all costs or other expenses involved.

2. Petitioners named as respondents: Robert Elsea, Warden, Metropolitan Correctional Center, Gayle Franzen, Director, Illinois Department of Corrections, and Louis Brewer, Warden, Stateville Prison.
   By naming both state and federal officials, petitioners properly sought to challenge both the authority of the state of Illinois to transfer and the authority of the United States to re-

ceive the transferees. Although petitioners were in the custody of Elsea at the MCC, their naming of Franzen and Brewer was proper. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 499, 93 S.Ct. 1123, 1132, 35 L.Ed.2d 443 (1973) (although petitioner confined in Alabama actual dispute is with Commonwealth of Kentucky and thus action properly brought in Kentucky with Alabama merely acting as agent for Kentucky); *Stearns v. Parker*, 469 F.2d 1090, 1091 (9th Cir. 1972) (Alaska prisoner transferred to federal custody must bring petition against state officials); *Battista v. Kenton*, 312 F.2d 167, 168 (2d Cir. 1963) (prisoner transferred from state to federal custody remains state prisoner and must utilize § 2254).

3. These eight petitioners and their respective proposed sites of incarceration were Randy Dillard (Atlanta, Georgia), Harlan De Savieu (Leavenworth, Kansas), Willie Clark (Lompoc, California), Leroy Hairston (Lewisburg, Pennsylvania), Larry Gambrell (Springfield, Missouri), Samuel Smith (Atlanta, Georgia), Luther Coburn (Lewisburg, Pennsylvania), and Michael Anderson (Leavenworth, Kansas).

Stephens' transfer. The district court ordered Hoover and Stephens' transfer. The district court ordered Hoover and Stephens returned to state custody and further ordered that once returned no prisoner could be transferred from state to federal custody without a hearing first being held to determine whether a need for specialized treatment existed. The district court further ordered that no prisoner could be transferred to a prison outside of Illinois.[4]

On appeal the State of Illinois challenges the district court's exercise of pendent jurisdiction and also the district court's decision that section 5003(a) requires a pretransfer hearing. We vacate and remand.

## II.

■ The district court concluded that it had pendent jurisdiction over the state constitutional claim and that the petitioners' rights under the Illinois Constitution were violated; the court determined that writs of habeas corpus should issue. On appeal the parties focus on the propriety of the exercise of pendent jurisdiction in a habeas corpus proceeding. But this focus ignores

the more fundamental question whether the district court had the power to issue a writ of habeas corpus for a violation of state law.

The district court, in ordering habeas relief, based its exercise of power on 28 U.S.C. § 2254, the provision that governs the procedure for habeas relief to state prisoners:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that *he is in custody in violation of the Constitution or laws or treaties of the United States.*

28 U.S.C. § 2254(a) (1976) (emphasis added). This provision, like the corresponding general jurisdictional grant applying to habeas corpus,[5] limits habeas relief to violations of the Constitution or laws or treaties of the United States.[6] Cases interpreting the habeas corpus statutes have uniformly held that a writ of habeas corpus can be issued only for a violation of federally protected rights.[7] *Cronnon v. Alabama*, 587 F.2d 246

---

4. Although this case did not proceed as a class action the district court's order apparently was meant to cover all possible future transfers. Also, the district court's order reads as if it were granting injunctive relief rather than writs of habeas corpus.

   The district court's opinion is reported at 501 F.Supp. 83 (N.D.Ill.1980).

5. Title 28 U.S.C. § 2241(c)(3) (1976) provides:
   The writ of habeas corpus shall not extend to a prisoner unless—
   He is in custody in violation of the Constitution or laws or treaties of the United States. . . .

6. For convenience, we have used the phrase federally protected rights to encompass the rights cognizable in a habeas proceeding.

7. In *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), the Court held that all constitutional claims are cognizable under § 2254. Since *Brown* this principle regarding the substantive reach of sections 2241 and 2254 has essentially remained unchanged. *But cf. Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (fourth amendment claims not cognizable under § 2254 where there was a full and fair opportunity to litigate in state court). Most developments in habeas since

*Brown* have focused on the procedural problems inherent in § 2254 and its dual system of litigating claims. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (state prisoner who failed in state proceedings to object to use of confession cannot raise claim in federal habeas proceeding absent showing of cause and prejudice); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976) (state prisoner who failed to object in state proceeding to composition of grand jury cannot raise claim in habeas proceeding absent showing of cause and prejudice); *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) (state prisoner not precluded from raising claim on habeas for first time unless there was a deliberate bypass of state appellate review); *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (evidentiary hearing must be held when state factfinding procedure inadequate). For an excellent discussion of the doctrinal developments from *Brown* to *Stone* see Comment, *Development of Federal Habeas Corpus Since* Stone v. Powell, 1979 Wis.L.Rev. 1145 [hereinafter cited as Comment, *Habeas Corpus Since* Stone].

   The fact that the claim involved is based on the state constitution rather than a state statute does not change the result. The crucial issue remains whether there is a violation of

(5th Cir.), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979); *Chance v. Garrison*, 537 F.2d 1212 (4th Cir. 1976); *Israel v. Odom*, 521 F.2d 1370 (7th Cir. 1975); *McCord v. Henderson*, 384 F.2d 135 (6th Cir. 1967).[8]

The district court ignored this principle in issuing a writ of habeas corpus for a state law violation. Instead, the district court apparently assumed that, if pendent jurisdiction over the state law claim existed, the federal remedy (embodied in § 2254) was available. This analysis, however, fails to recognize the distinction between the existence of federal court jurisdiction over the state law claim and the law that governs the state law claim.

■■■ The district court erred in failing to recognize this crucial choice-of-law issue which is implicit in the exercise of pendent jurisdiction.[9] The pendent state law claim is governed in all respects by state law and the federal remedy of habeas corpus is unavailable. Merely because the state law claim is in federal court does not lead to the application of federal law. As *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its offspring make clear, absent a valid and controlling federal law, state law governs a state law claim (even in nondiversity cases). In providing for habeas relief, Congress intended to limit the issuance of the writ of habeas corpus to violations of federally protected rights, and therefore state law must govern the issue of remedy for violations of state law. Since the district court lacked the power to issue the writ of habeas corpus,

that portion of the district order granting the writ must be reversed.

## III.

■■■ But our holding that the district court lacked the power to issue a writ for the violation of state law does not end our inquiry. Ordinarily this holding would simply require the district court to determine, on remand, whether a state law remedy exists for the violation of state law (and, if so, to impose the state remedy). It is at this point that the issue of the propriety of pendent jurisdiction becomes properly presented—that is, the question whether the district court may determine that a violation of state law occurred and may order a state law remedy. Rather than remand for this determination, we believe that we must here and now decide the scope of pendent jurisdiction in these circumstances. The parties have fully briefed the issue and the district court did in fact hold that it had jurisdiction over the pendent claim. As noted above the court merely applied the wrong law in disposing of the claim and on remand would presumably continue to exercise jurisdiction to decide whether state law provided a remedy. Therefore, the issue of subject matter jurisdiction is now properly presented for review.

The district court concluded that under the doctrine of pendent jurisdiction, as set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, it could decide the state law claim. *Gibbs* set forth a two-part test to determine whether

a federally protected right. *See* Note *Developments—Federal Habeas Corpus*, 83 Harv. L.Rev. 1038, 1070 (1970) [hereinafter cited as Note, *Federal Habeas Corpus*].

**8.** The only decisions that recognize the relevance of state law to a federal habeas claim are those that hold that a violation of state law may be a violation of federal law if the violation independently rises to the level of a violation of the federal Constitution. *Cronnon*, 587 F.2d at 250; *Chance*, 537 F.2d at 1215. The analysis in these decisions is that an independent federal right has been implicated by the violation of the state law. An example of this situation might be a state constitutional provi-

sion that provided free education to all children and which was violated by not providing the free education to black children. The constitutional violation is not the violation of the state constitution but the discriminatory action in violation of the Equal Protection Clause of the fourteenth amendment. In the present case we note that the alleged violation of the Illinois Constitution has not implicated a substantive federal right.

**9.** For a discussion of this choice of law issue in pendent jurisdiction cases see Westen & Lehman, *Is There Life for* Erie *After the Death of Diversity*, 78 Mich.L.Rev. 311 (1980).

a state law claim could be pended to a federal claim. First, there is the question whether the federal claim is of sufficient substance to confer federal jurisdiction. Second, the issue is presented whether the federal and state claims arise out of a "common nucleus of operative fact [which plaintiff] would ordinarily be expected to try ... in one judicial proceeding...." 383 U.S. at 725, 86 S.Ct. at 1138.[10]

Resolution of these two issues is relevant to determining the reach of the constitutional power of a federal district court to entertain state law claims. For Article III of the Constitution circumscribes the judicial power of federal courts to hear certain cases, and it must be determined whether a federal court's attempt to dispose of state law claims is beyond the grant of power contained in Article III.[11] *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. The issue in *Gibbs* was, assuming that Congress has conferred jurisdiction over the case or controversy, whether the exercise of this jurisdiction is consistent with the limitations in Article III. *Gibbs* attempted to provide a pragmatic analysis for determining when the relationship between the federal and state claims is such that a federal court has the constitutional power to try all the issues. Thus *Gibbs* applied the "sufficient substance" and "common nucleus of operative facts" tests.

After determining that this power to try all the issues existed, *Gibbs* vested discretion in the district courts to determine whether or not this power should be exercised. Resolution of this discretionary question required a balancing of factors such as comity, fairness to the litigants, judicial economy, and the state's interest in administering its affairs. *Gibbs*, 383 U.S. at 726–27, 86 S.Ct. at 1139–1140.

The district court here uncritically accepted the two-part test of *Gibbs* as the only relevant hurdle to overcome in exercising pendent jurisdiction. Convinced that the *Gibbs* criteria were satisfied, the district court concluded that pendent jurisdiction over the state law claim could and should be exercised.

■■ But while *Gibbs* is relevant to the issue of pendent jurisdiction, it is by no means the only limitation on the exercise of pendent jurisdiction. The Supreme Court after *Gibbs* has emphasized that, besides the constitutional and discretionary issues which *Gibbs* addressed, we must consider the question whether the statutory grant of federal jurisdiction in question implicitly or explicitly excludes the state claim from federal court consideration. This latter question recognizes that Congress possesses considerable authority to regulate the jurisdiction of the inferior federal courts. *Sheldon v. Sill*, 49 U.S. (8 How.) 453, 12 L.Ed. 1147 (1850); Hart & Wechsler, The Federal Courts and the Federal System 309–22 (2d ed. 1973).

## IV.

Post-*Gibbs* decisions recognized that *Gibbs* provided only a partial definition of the limits of pendent jurisdiction. In *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), plaintiff, a county employee, filed an action under 42 U.S.C. § 1983 naming her superior, the county treasurer, Howard, as a defendant. Plaintiff's federal claim was that she was discharged without a hearing, in violation of her due process rights. Pended to the federal claim, plaintiff also asserted a state law claim against the county. Thus, the state law claim against the county was in federal court only on the basis of the claim against the county treasurer (allegedly acting under color of state law). Plaintiff argued that under *Gibbs* the federal and state claims in Aldinger arose out of a common nucleus of operative fact, and therefore there was pendent jurisdiction over the state claim.

---

10. For a general discussion of the import of *Gibbs* see Shakman, *The New Pendent Jurisdiction of the Federal Courts*, 20 Stan.L.Rev. 262 (1968).

11. The constitutional power of a federal court to decide matters of state law was first recognized in *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 326, 6 L.Ed. 204 (1824).

The Supreme Court in *Aldinger* held that pendent jurisdiction did not exist. The Court first noted that in *Gibbs* the state claim was asserted against a party already properly in federal court, whereas in *Aldinger* the county was in federal court only on the strength of the pendent claim. 427 U.S. at 14–15, 96 S.Ct. at 2420–2421. The Court then analyzed the significance of the statutory grant of federal court jurisdiction and distinguished *Gibbs.*

> *Gibbs,* and its lineal ancestor, *Osborn,* were couched in terms of Art. III's grant of judicial power ... since they ... represented inquiries into the scope of Art. III jurisdiction .... None of them posed the need for a further inquiry into the underlying statutory grant of federal jurisdiction ....

427 U.S. at 13–14, 96 S.Ct. at 2419–2420.

The Court in *Aldinger* considered the scope of the federal cause of action to be significant in construing the underlying grant of jurisdiction. The Court reasoned that Congress had excluded counties from the substantive coverage in § 1983,[12] and therefore by reference excluded "counties" from the jurisdictional grant in § 1343(3). Thus, pendent jurisdiction over the state law claim could not be exercised, Congress having intended not to extend federal jurisdiction over the state law claim against the county.

To be sure, *Aldinger* raised a problem not present in the instant case—that is, the plaintiff in *Aldinger* attempted to assert a pendent claim against a party which was not already properly in federal court. In the present case, however, the state law claim is being asserted against a party over whom independent federal court jurisdiction clearly exists. Thus, it would seem the simplest of tasks to distinguish away *Aldinger* and the statutory analysis which it requires.

But such an effort at distinction was rejected in another recent Supreme Court decision on pendent jurisdiction, *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). In *Owen,* plaintiff Kroger, an Iowa citizen, sued Omaha Public Power District (OPPD), a citizen of Nebraska, basing jurisdiction on diversity of citizenship. 28 U.S.C. § 1332. OPPD then (on a claim for contribution) impleaded Owen, an Iowa citizen, under Fed.R.Civ.P. 14, alleging Owen's negligence. Thereafter, Kroger amended her complaint also to assert a claim against Owen. While federal jurisdiction existed as to OPPD's claim against Owen, Owen and Kroger were both Iowa citizens and therefore diversity jurisdiction did not exist. OPPD's motion for summary judgment dismissing on the merits Kroger's claim against OPPD was granted and trial proceeded on Kroger's claim against Owen.

The Supreme Court held that pendent jurisdiction did not exist over Kroger's claim against Owen. The Court reaffirmed *Aldinger's* description of what it was exactly that *Gibbs* had decided:

> It is apparent that *Gibbs* delineated the constitutional limits of federal judicial power. But even if it be assumed that the District Court in the present case had constitutional power to decide [Kroger's] lawsuit against [Owen], it does not follow that [jurisdiction was present]. Constitutional power is merely the first hurdle that must be overcome in determining that a federal court has jurisdiction over a particular controversy. For the jurisdiction of the federal courts is limited not only by the provisions of Art. III ... but also by Acts of Congress.

437 U.S. at 371–72, 98 S.Ct. at 2401–2402.

> *Aldinger* make[s] [it] clear that a finding that federal and nonfederal claims arise from a "common nucleus of operative

---

**12.** This interpretation of § 1983 was set forth in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and subsequently overruled in *Monell v. New York City Dep't of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, this subsequent change in the interpretation of § 1983 "in no way qual-

ifies the holding in *Aldinger* that the jurisdictional questions presented in a case ... are statutory as well as constitutional ...." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 372–73 n.12, 98 S.Ct. 2396, 2401–2402, 57 L.Ed.2d 274 (1978).

fact," the test of *Gibbs*, does not end the inquiry into whether a federal court has power to hear the nonfederal claims along with the federal ones. Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether "Congress in [that statute] has . . . expressly or by implication negated" the exercise of jurisdiction over the particular nonfederal claim.

437 U.S. at 373, 98 S.Ct. at 2402 (quoting *Aldinger*, 427 U.S. at 18, 96 S.Ct. at 2422.) [13]

■ Although Owen already was properly in federal court on the basis of OPPD's complaint for contribution, the Court nonetheless applied the *Aldinger* analysis. Thus, the fact that the pendent claim in *Owen* was asserted against a party already properly in federal court did not render *Aldinger* inapposite. Indeed, the Court believed that the *Aldinger* approach was controlling. This was made clear when the Court described the issue in *Owen* in terms of the fact pattern in *Gibbs*:

> Nonetheless, the Court of Appeals was correct in perceiving that *Gibbs* and this case are two species of the same generic problem: Under what circumstances may a federal court hear and decide a state-law claim arising between citizens of the same State?

437 U.S. at 370, 98 S.Ct. at 2401.[14]

Thus, *Aldinger* cannot be limited only to those cases where a plaintiff attempts to assert a state law claim against a party not already in federal court. Instead, it applies to all cases in which it is necessary to examine the underlying statutory grant of jurisdiction.[15] We therefore must determine if

---

**13.** For a discussion of *Gibbs, Aldinger,* and *Owen* and the relationship among the cases, see Theis, *Pendent Jurisdiction Over Claims Arising Under Federal Law*, 32 Hastings L.J. 91 (1980); Garvey, *The Limits of Ancillary Jurisdiction*, 57 Tex.L.Rev. 697 (1979); Comment, *Aldinger v. Howard and Pendent Jurisdiction*, 77 Colum.L.Rev. 127 (1977); Comment, *Limiting Federal Ancillary and Pendent Jurisdiction in Diversity Cases*, 64 Iowa L.Rev. 930 (1979); Comment, *The Impact of* Aldinger v. Howard *on Pendent Party Jurisdiction*, 125 U.Pa.L.Rev. 1357 (1977); Comment, *Concept of Law-Tied Pendent Jurisdiction*: Gibbs *and* Aldinger *Reconsidered*, 87 Yale L.J. 627 (1978) [hereinafter cited as Comment, *Concept of Law-Tied Pendent Jurisdiction*].

**14.** *See also* Comment, *Concept of Law-Tied Pendent Jurisdiction, supra* note 13, at 633–34 (*Gibbs* and *Aldinger* actually involve same analytical problems). Thus, we see no reason to distinguish between pendent party jurisdiction, pendent claim jurisdiction, and ancillary jurisdiction in our discussion.

> Given the complexities of the many manifestations of federal jurisdiction, together with the countless factual permutations possible under the Federal Rules, there is little profit in attempting to decide . . . whether there are any "principled" differences between pendent and ancillary jurisdiction; or, if there are, what effect *Gibbs* had on such differences. Since it is upon *Gibbs'* language that the lower federal courts have relied . . . we think the better approach is to determine what *Gibbs* did and did not decide, and to identify what we deem are important differ-

ences between the jurisdiction sustained in *Gibbs* and that asserted here.

*Aldinger*, 427 U.S. at 13, 96 S.Ct. at 2419–2420. We accept this analysis and conclude that because the district court relies upon *Gibbs* our inquiry must focus on what *Gibbs* decided.

**15.** This point bears emphasis. In most instances the underlying jurisdictional grant will give no indication that Congress intended to limit a district court's statutory power to entertain pendent claims, and hence pendent jurisdiction may be exercised. Also, we emphasize that our analysis, and the analysis contained in *Aldinger* and *Owen*, do not demand that because Congress has expressly conferred jurisdiction over a certain class of cases, by inference Congress has excluded other claims from being subject to pendent jurisdiction. Such an assertion would, of course, prove too much. This contention would unreasonably suggest that because federal district courts are courts of limited jurisdiction *every* grant of jurisdiction by Congress would by implication remove certain pendent claims from the jurisdiction of the district courts. Justice Brennan made this point in his dissent in *Aldinger*:

> The test the Court announces is "whether by virtue of the statutory grant of subject-matter jurisdiction, upon which the petitioner's principal claim . . . rests, Congress has addressed itself to the *party* as to whom jurisdiction pendent to the principal claim is sought." . . . At one level of analysis, this test is of course meaningless, being capable of application to *all* cases, because all instances of asserted pendent-party jurisdiction

Congress has spoken to the exercise of pendent jurisdiction over state law claims in the matter of habeas corpus.

## V.

### A.

At the outset we stress the narrowness of our inquiry in the present case. We are faced only with the interrelationship between the doctrine of pendent jurisdiction and the *unique* federal statutory scheme that offers habeas corpus relief to state prisoners, with emphasis on the *incomparably unique* problems of federalism created by such a system. We expressly eschew any broad principles capable of adoption for general application to questions of pendent jurisdiction. Rather we are faced solely with this specific issue: can a state constitutional claim be raised as a pendent claim in a habeas corpus action brought in federal court under the habeas grant of jurisdiction.[16]

As *Aldinger* and *Owen* make clear, our focus must be on the particular jurisdictional grant under which the claim is brought. In the present case the petition for habeas corpus was brought pursuant to 28 U.S.C. § 2254(a) which provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Section 2254(a) was enacted in 1966 as part of the general amendments to the habeas corpus statutes.[17] The legislative reports accompanying the 1966 amendments do not clearly indicate the purpose behind inclusion of section 2254(a).[18] Prior to 1966 federal

---

will by definition involve a party to whom Congress has impliedly "addressed itself" by not expressly conferring subject-matter jurisdiction on the federal courts.

427 U.S. at 22–23, 96 S.Ct. at 2424 (Brennan, J., dissenting) (quoting opinion of the Court at 16) (emphasis in original). *See also* Comment, *Concept of Law-Tied Pendent Jurisdiction, supra* note 13, at 646–47 (criticizing legislative intent analysis of *Aldinger*). Our analysis turns on whether it can be demonstrated that Congress has intended that the particular pendent claim not be brought in federal court. Again, as we noted above, such congressional intent may not be demonstrated merely by negative implication from Congress' creation of jurisdiction over a certain class of claims.

Those cases that have held that state law claims are not cognizable in a habeas corpus proceeding do not rely on Congress' express statement that only federal constitutional and statutory claims are cognizable in a habeas proceeding, but rather the historic function of the Great Writ. *See Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

**16.** Thus, an action brought for similar relief under 42 U.S.C. § 1983 and its corresponding jurisdictional grant, 28 U.S.C. § 1343(3) would involve significantly different considerations. It is well-established that pendent jurisdiction over state law claims may be exercised in a case brought under section 1983 and section 1343(3). *Clappier v. Flynn*, 605 F.2d 519, 528 (10th Cir. 1979); *Brown v. Knox*, 547 F.2d 900, 902 (5th Cir.), *cert. denied*, 432 U.S. 906, 97 S.Ct. 2950, 53 L.Ed.2d 1078 (1977); *Colaizzi v. Walker*, 542 F.2d 969, 974 (7th Cir. 1976), *cert.*

denied, 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); *Curtis v. Everette*, 489 F.2d 516, 519–20 (3d Cir. 1973), *cert. denied sub nom. Smith v. Curtis*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). Our holding in this case in no way conflicts with these decisions. The federalism concerns that are of such importance to our decision in the instant case, while also relevant in general civil litigation, are nonetheless of especial significance in the exercise of habeas corpus jurisdiction. *See Preiser v. Rodriguez*, 411 U.S. 475, 490–92, 93 S.Ct. 1827, 1836–1837, 36 L.Ed.2d 439 (1973).

Also, we need not decide whether an action challenging a transfer may be brought under section 1983 or whether habeas corpus is the exclusive remedy. We note only that cases have been brought under both the habeas corpus statutes and as statutory claims. *Compare Howe v. Smith*, 452 U.S. 473, 101 S.Ct. 2468, 69 L.Ed.2d 171 (1981) (action brought under statute) (majority opinion) *with id.* at 2477 (Stewart, J., dissenting) (writ of habeas corpus is exclusive procedure for challenging transfer).

**17.** Pub.L.No. 89–711, § 2(b), 80 Stat. 1105 (1966).

**18.** *See* S.Rep.No. 1797, 89th Cong., 2d Sess. (1966); H.R.Rep.No. 1892, 89th Cong., 2d Sess. (1966), U.S.Code Cong. & Admin.News 1966, p. 3663; H.R.Rep.No. 1894, 89th Cong., 2d Sess. (1966). The primary purpose of the 1966 amendments to the habeas corpus statutes was procedural. ("H.R. 5958 … revises the procedures applicable to the review by lower federal

district courts had the authority to entertain petitions for habeas corpus brought by state prisoners pursuant to 28 U.S.C. § 2241(c)(3), which provides:

> The writ of habeas corpus shall not extend to a prisoner unless

> .    .    .    .    .

> He is in custody in violation of the Constitution or laws or treaties of the United States. . . .

Thus, the apparent conferral of jurisdiction contained in section 2254(a) is a restatement of the jurisdictional grant incorporated in section 2241(c)(3).[19] Likewise, section 2254(a) tracks the jurisdictional requirements of section 2241(c)(3) and restates the

well-established principle contained in section 2241(c)(3)—that is, the requirement that there be a violation of a federally protected right.

Section 2241(c)(3) traces its history to the first general grant of federal court jurisdiction over habeas corpus petitions brought by state prisoners. Thus, in order to determine the scope of section 2254(a) we must also examine the historical basis of section 2241(c)(3).

### B.

As we have held above, a writ of habeas corpus may be granted only on the grounds that the challenged custody is in "violation of the Constitution or laws or treaties of

---

courts of petitions for habeas corpus by prisoners who have been convicted and who are in custody pursuant to the judgment of a state court." H.R.Rep.No. 1892 at 3). Specifically, the 1966 amendments incorporated the criteria of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) for determining when state factfinding must be presumed correct for purposes of federal habeas corpus. Pub.L.No. 89–711, § 2(d), 80 Stat. 1105 (1966), now codified as 28 U.S.C. § 2254(d). It is the concern which dominated in the 1966 legislation.

**19.** Leighton, *Federal Supremacy and Federal Habeas Corpus*, 12 St. Louis U.L.J. 74, 88 (1967) ("Subsection (a) of amended section 2254 re-emphasizes the basis of federal habeas corpus jurisdiction by providing that a federal judge shall entertain an application for a writ of habeas corpus on behalf of a person in state custody. . . ."). All sources, when discussing the genealogy of the jurisdictional grant of federal habeas corpus for state prisoners, focus on section 2241(c)(3). *See* Comment, *Federal Habeas Corpus Since* Stone, *supra* note 7, at 1147; Note, *Federal Habeas Corpus, supra* note 7, at 1048. When noting jurisdiction in habeas corpus cases, some courts cite to both sections 2241 and 2254. *Stone*, 428 U.S. at 518, 96 S.Ct. at 3063 (Brennan, J., dissenting); *Francis v. Henderson*, 425 U.S. 536, 538, 96 S.Ct. 1708, 1709, 48 L.Ed.2d 149 (1976); *Preiser v. Rodriguez*, 411 U.S. 475, 482–83, 93 S.Ct. 1827, 1832–1833, 36 L.Ed.2d 439 (1973); *Lehman v. Lycoming County Children's Serv.*, 648 F.2d 135, 146 (3d Cir.) (en banc), (Adams, J., concurring), *cert. granted*, —— U.S. ——, 102 S.Ct. 89, 70 L.Ed.2d 82 (1981); *United States ex rel. Russo v. Superior Court*, 483 F.2d 7, 12 (3d Cir.), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973); *Bates v. Estelle*, 483 F.Supp. 224, 225 (S.D.Tex.1980). Other courts have referred exclusively to section 2254(a)

when noting jurisdiction. *Echevarria v. Bell*, 579 F.2d 1022, 1024 (7th Cir. 1978); *United States ex rel. Stuart v. Yeager*, 434 F.2d 1308, 1309 (3d Cir. 1970); *Driscoll v. Schmidt*, 354 F.Supp. 1225, 1226 (W.D.Wis.1973). The issue of what statute confers jurisdiction is not of significance in the present case because the substantive reach of the statutes is identical.

Perhaps one distinction between the two sections is that section 2254 is reserved for prisoners who are in custody pursuant to a state court conviction, while section 2241 confers jurisdiction to entertain petitions challenging pre-trial custody by those individuals in state custody. There is authority for this distinction. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 502, 504, 93 S.Ct. 1123, 1133, 1134, 35 L.Ed.2d 443 (1973) (Rehnquist, J., dissenting); *Neville v. Cavanagh*, 611 F.2d 673, 675 (7th Cir. 1979), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980); *Moore v. De Young*, 515 F.2d 437, 442 (3d Cir. 1975). Also, a person in federal custody may seek to invoke the jurisdictional grant of section 2241 if the requested relief is unavailable under 28 U.S.C. § 2255. Finally, an individual in federal custody may seek to challenge the constitutionality of his confinement in aspects which are unrelated to his conviction as such and in these circumstances may seek to bring a petition under section 2241.

Another possible explanation for including in section 2254 a restatement of the jurisdictional grant is that the 1966 amendments provided a general procedure governing petitions by state prisoners under state judgments of convictions. Thus, Congress perhaps sought to embody in one section the general procedural and substantive law governing post-conviction challenges to state court convictions.

the United States." [20] Matters involving issues of state law are not cognizable in a habeas corpus proceeding and federal habeas relief cannot be granted on state law grounds. *Cronnon v. Alabama*, 587 F.2d 246, 250 (5th Cir. 1979). Thus, the substantive reach of the habeas corpus statute precludes relief on the basis of a state law claim.

*Aldinger* teaches that the scope of the jurisdictional grant is inextricably tied to the scope of the federal claim. In the present case Congress has limited the scope of habeas relief to exclude consideration of errors of state law. Thus, the corresponding grant of jurisdiction, according to *Aldinger*, would also seem to be so limited.

This limitation of habeas relief to violations of *solely* federally protected rights becomes even more apparent when the history of section 2241(c)(3) is examined. General federal court jurisdiction over habeas corpus petitions brought by state prisoners was not legislatively created until 1867.[21] The Act of 1867 was enacted immediately after the Civil War and in anticipation of the recalcitrance of the South toward the Civil War Amendments and toward the reconstruction legislation. *See* Cong.Globe, 39th Cong., 1st Sess. 87, 4151 (1866).[22] This history, of course, sharpens the legislative focus on federally protected rights to the exclusion of state claims.

**20.** In this way, sections 2241(c)(3) and 2254 are no different in their substantive reach.

**21.** Judiciary Act of February 5, 1867, c. 28, § 1, 14 Stat. 385, 386 provided:

[The] several courts of the United States, and the several justices and judges of such courts, within their respective jurisdictions . . . shall have power to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States. . . .

Prior to this statute, habeas relief for state prisoners was limited to particular cases and was made available only in response to specified political conflicts. For example, the Force Act of March 2, 1833, c. 57, § 7, 4 Stat. 634, 635 made habeas relief available to federal officers who were imprisoned for acting under federal authority—specifically, those federal officers imprisoned by state officials for enforcing the Tariff of Abominations. The Act of August 29, 1842, c. 257, 5 Stat. 539, 540 extended habeas relief to foreign nationals acting under authority of a foreign state and was passed after British protest of the trial of a Canadian soldier in a New York State Court. For a discussion of the statutory changes in habeas corpus, see Longsdorf, *The Federal Habeas Corpus Acts Original and Amended*, 13 F.R.D. 407 (1953); Oaks, *Legal History in the High Court—Habeas Corpus*, 64 Mich.L.Rev. 451 (1966); Oaks, *Habeas Corpus in the States: 1776–1865*, 32 U.Chi.L.Rev. 243 (1965); Mayers, *The Habeas Corpus Act of 1867: The Supreme Court as Legal Historian*, 33 U.Chi.L. Rev. 31 (1965); Glass, *Historical Aspects of Habeas Corpus*, 9 St. John's L.Rev. 55 (1934).

**22.** This historical view of the habeas corpus statute of 1867 has been vigorously disputed. Oaks, *supra* note 21; Mayers, *supra* note 21. Oaks and Mayers dispute the Supreme Court's conclusion that the history surrounding the passage of the Act of 1867 supported any interpretation of the Act that extended habeas relief to state prisoners or that the reconstruction legislation was Congress' concern when passing the Act of 1867. To the contrary, Mayers argues that Congress' sole concern in passing the Act of 1867 was to enforce the Thirteenth Amendment and points to the fact that "prisoners" are noticeably omitted from the statute's language.

There is some support for this narrow view of the Act of 1867 in the legislative history. Yet the Supreme Court authority is to the contrary, *see, e.g., Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Also, the approach followed by Mayers and Oaks constitutes a rather constricted method of statutory interpretation. It was not until the commands of the Bill of Rights were applied to the states through the Due Process Clause of the Fourteenth Amendment through a series of Supreme Court decisions that the Act of 1867 took on the significance ascribed to it by the Supreme Court. *See Fay*, 372 U.S. at 410, 83 S.Ct. at 833.

We also note that the interpretation of the habeas corpus statutes may often differ from the ordinary case of statutory interpretation. The habeas corpus statutes are broadly worded statutes that are, in their sweep, comparable to constitutional provisions. Thus, they must be so interpreted. *Cf.* Tushnet, *Constitutional and Statutory Analyses in the Law of Federal Jurisdiction*, 25 U.C.L.A.L.Rev. 1301, 1321 (1978) (recent Supreme Court decisions in the area of habeas corpus [*Stone* and *Sykes* ] indicate that habeas corpus statutes are "delegations to the federal courts to determine in light of changing circumstances, what form federal judicial protection of federal rights should take").

While the exclusion of state claims from the substantive reach of the habeas corpus statutes supports our conclusion with respect to an implied statutory limitation of jurisdiction, we do not believe that we can rely solely on that circumstance. *See* note 15, *supra.* Rather, in addition, the peculiar structure of the habeas corpus statutes indicates a congressional intent to exclude state claims from federal habeas jurisdiction.[23]

### C.

The review of state court convictions by a federal district court admittedly raises serious problems of federalism.[24] Congress, cognizant of these problems of federalism, sought to structure the habeas procedure in a manner to alleviate some of these tensions and to promote comity between federal and state courts. This concern is best reflected in the requirement that a state prisoner exhaust his state remedies before seeking federal habeas relief. Also, implicit in this exhaustion doctrine is a preference of forum that potential habeas claims first be litigated in a state court before recourse is had to a federal district court.

The exhaustion requirement was first set forth in *Ex Parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886) and is now codified as 28 U.S.C. § 2254(b), (c).[25] This requirement allows the state courts the opportunity to correct their own errors before federal courts intervene, thus presumably easing the tension inherent in federal court review of state criminal convictions. *See Fay v. Noia*, 372 U.S. at 418–19, 83 S.Ct. at 837–838.

The exhaustion requirement is, therefore, based on the notion that state courts are to play at least a coequal role in enforcing federal constitutional rights and that Congress intended state courts to be the first forum in which to seek protection of federal rights.[26] Only when the state courts have

**23.** Another factor discussed by the Court in *Kroger* is the context in which the nonfederal claim is asserted. 437 U.S. at 376, 98 S.Ct. at 2404. By referring to this "context" the Court had certain practical considerations in mind. For example, if the party cannot assert the nonfederal claim in the federal court and the inability to raise the claim will result in an irretrievable loss of rights, jurisdiction over the nonfederal claim may exist. This is especially true where the person attempting to assert the state law claim did not choose the federal forum but rather is haled into federal court by another party. *Id.*

If the context in which the nonfederal claim is raised indicates such an irretrievable loss of rights it can be forcefully argued that Congress intended that the grant of jurisdiction encompass the nonfederal claim. The Court in *Kroger* recognized this interrelationship between congressional intent and the practical considerations affecting the exercise of federal jurisdiction over nonfederal claims. 437 U.S. at 377, 98 S.Ct. at 2404. We note that none of the practical considerations which look to the context in which the state claim is raised argue for the exercise of pendent jurisdiction in the present case. Petitioners' state law claims, as well as federal claims, could have been raised in state court. Rather, the context in which the state law claim was raised—a habeas corpus proceeding—as discussed above, is a uniquely structured proceeding that favors state court adjudication of claims.

**24.** The concern about federalism problems is a significant factor in considering the scope of the habeas corpus statutes. *See Habeas Corpus Since Stone, supra* note 7, at 1152 n.46, where recent Supreme Court decisions such as *Wainwright v. Sykes* and *Francis v. Henderson* are explained on the basis of the Court's concern for federalism and comity. For a general discussion of the federalism concerns in habeas, see Michelman, *The "New" Federalism and the Burger Court's Deference to the States in Federal Habeas Proceedings*, 64 Iowa L.Rev. 233 (1979).

**25.** 28 U.S.C. § 2254(b), (c) provide:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

**26.** This aspect of the federalism doctrine is often referred to as "parity." This notion of parity has at least two distinct aspects. First, state courts are as capable as are federal courts in protecting federal rights, and second, any

failed to remedy the alleged violation will a federal court even find it appropriate to entertain a habeas petition.

The exhaustion principle as such does not, of course, govern the instant case. Yet we believe that the policies underlying the principle fully support our interpretation of the jurisdictional statutes governing habeas corpus. By requiring a petitioner to exhaust his claims in state court, Congress has obviously evinced a preference for initial state court litigation of federal claims. When the exhaustion requirement is read in conjunction with the limitations, already discussed, which are imposed upon the scope of the issues cognizable in a habeas corpus proceeding, we think it fair to conclude that Congress preferred that state courts be the *sole* forum for litigating state claims which might otherwise be pended to habeas claims.[27]

We reach this conclusion because the entire rationale underlying pendent jurisdiction of federal courts over state claims, the economy of judicial resources achieved by trying the pendent claim first and solely in federal court together with the factually related federal claims, is inapplicable in habeas corpus. The habeas corpus procedures contemplate duplicate litigation of federal constitutional claims in the interest of federalism—obviously indicating that judicial economy is not a preeminent policy consideration in habeas proceedings. It would make no sense in terms of judicial economy to pend state claims to habeas corpus claims in federal court if in any event the federal habeas claims were required to be first exhausted in state court. For all these reasons we conclude that, in general, state law claims may not be appended to federal ha-

beas corpus claims, and federal courts in habeas corpus proceedings have no jurisdiction over such state law claims.

## VI.

The district court's grant of relief to eight of the petitioners on the state law claim made it unnecessary for that court to dispose of those petitioners' federal law claims. As to petitioners Hoover and Stephens, who had no state law claims, the district court granted relief on the basis of our *Lono* decision. As to Hoover and Stephens (*see* note 30 *infra*) and because we are vacating that portion of the district court order granting the writs of the other petitioners on the basis of state law, we find it necessary to discuss the federal law issues.

▬▬ Petitioners' first claim, relying on our decision in *Lono*, alleged violations of procedural due process and 18 U.S.C. § 5003. After the district court order in the instant case had been issued, the Supreme Court explicitly rejected our *Lono* decision and held that no hearing is necessary before the transfer of a state prisoner to federal custody. *Howe v. Smith*, 452 U.S. 473, 101 S.Ct. 2468, 69 L.Ed.2d 171 (1981); *see Hawaii v. Mederios*, 453 U.S. 902, 101 S.Ct. 3135, 69 L.Ed.2d 989 (1981), *vacating and remanding Anthony v. Wilkinson*, 637 F.2d 1130 (7th Cir. 1981). Therefore, the first federal claim of all petitioners must be dismissed.

▬▬ The second federal claim of petitioners is that the Illinois Constitution creates a liberty interest that cannot be extinguished without a prior hearing.[28] Unlike

state court errors on matters of federal law can be corrected by the Supreme Court. Comment, *Habeas Corpus Since* Stone, *supra* note 7, at 1152 n.46. *But see* Nuebourne, *The Myth of Parity*, 90 Harv.L.Rev. 1105 (1977).

**27.** The deference to state court adjudication can also be noted in the presumption of correctness afforded to state court findings of fact. 28 U.S.C. § 2254(d). *See* S.Rep.No. 1797, 89th Cong., 2d Sess. (1966); H.R.Rep.No. 1892, 89th Cong., 2d Sess. (1966) (presumption of correctness intended to give greater degree of finality

to state convictions and reduce interference with procedures and processes of state courts).

**28.** Petitioners apparently also allege that there is a violation of substantive due process by virtue of a violation of the state constitution. This alleged violation of state law does not *per se* result in a violation of the federal Constitution. *See Crooker v. California*, 357 U.S. 433, 437, 78 S.Ct. 1287, 1290, 2 L.Ed.2d 1448 (1958); *Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948); *Jackson v. Stinchcomb*, 635 F.2d 462, 468 (5th Cir. 1981);

the first claim, which apparently rested on the contention that federal law created a liberty interest, here petitioners argue that state law creates a liberty interest. To be sure, state law can be the source of a liberty interest which triggers the application of the Due Process Clause of the Fourteenth Amendment. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 11–12, 99 S.Ct. 2100, 2105–2106, 60 L.Ed.2d 668 (1979). In the present case the district court did not pass upon the question whether the Illinois Constitution may create a liberty interest so as to trigger the safeguards of the Fourteenth Amendment, nor has the issue been briefed or argued.[29] Therefore, this claim is remanded to the district court for further proceedings in accordance with this opinion.[30] The judgments granting all the writs of habeas corpus are vacated and remanded with instructions to dismiss the complaints or, where appropriate, to consider the procedural due process question involving liberty interests purportedly created by the Illinois Constitution.

*Ellentuck v. Klein*, 570 F.2d 414, 427–28 (2d Cir. 1978); *Houston v. Estelle*, 569 F.2d 372, 380 (5th Cir. 1978); *Haines v. Kerner*, 492 F.2d 937, 941 n.8 (7th Cir. 1974) (per curiam) (appeal after trial from Supreme Court remand). In order for the violation of state law to rise to the level of a federal constitutional violation, it must be alleged that the violation was the result of arbitrary state action. *United States ex rel. Burnett v. Illinois*, 619 F.2d 668, 670 (7th Cir.), *cert. denied*, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980). No such claim has been made in this case and therefore no federal claim is presented.

29. On remand the district court should determine whether the Illinois Constitution creates a conditional liberty interest in remaining incarcerated in Illinois. Of course, if the provision at issue is interpreted to be an unconditional prohibition on interstate transfers, there would presumably be no right to procedural due process. In that instance, petitioners' only relief

would be under state law, there being no federal right implicated. *Miller v. Carson*, 563 F.2d 757, 760 n.7 (5th Cir. 1977); *Geneva Towers Tenants Org. v. Federated Mortgage Inv.*, 504 F.2d 483, 493, 494 n.2 (9th Cir. 1974) (Hufstedler, J., dissenting).

30. As noted above, petitioners Hoover and Stephens were granted relief on the basis of our *Lono* decision. As we noted above, relief no longer is available under that legal theory. The judgment as to Hoover and Stephens, therefore, must be vacated and remanded for reconsideration on the issue whether the Illinois Constitution creates a liberty interest. The language of the Illinois Constitution refers only to out of state transfers. We need not decide whether this is the correct interpretation under state law. On remand Hoover and Stephens may contend that the provision impliedly prohibits their transfer also. Of course, we express no opinion on this issue.