# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1065

_____

Randy Lee Closs,

    Appellee,

        v.

Douglas Weber, Warden of the
South Dakota State Penitentiary,

    Appellant.

\*  
\*  
\*  
\*  
\*  Appeal from the United States  
\*  District Court for the District of  
\*  South Dakota.  
\*  
\*  
\*  
\*

_____

Submitted:  October 19, 2000

Filed:  January 30, 2001

_____

Before WOLLMAN, Chief Judge, and BEAM and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Fourteen years after his conviction in state court, Randy Closs was granted a conditional parole.  The parole agreement, which he signed, stated that "[i]n consideration" of being granted parole he would comply with instructions regarding his parole supervision and with other "special limitations and conditions."  Mr. Closs had a long-term diagnosis of schizophrenia, and as part of the "special limitations and conditions" of his parole he agreed to "[b]egin and maintain psychological or

psychiatric treatment at a facility or with a psychologist or psychiatrist approved by the [Board of Pardons and Parole]."

In compliance with the parole agreement, Mr. Closs voluntarily entered a board-approved mental health facility for psychiatric treatment. At the facility, his attending psychiatrist prescribed a psychotropic drug for him. Psychotropic drugs are "commonly used in treating mental disorders such as schizophrenia" by altering the chemical balance in the brain, *see Washington v. Harper*, 494 U.S. 210, 214 (1990). Mr. Closs initially refused to take the prescribed medication. After his parole agent reportedly explained to him that "cooperation with his treatment was imperative and that any future refusal to do so would ... result in a [parole] violation," he took the drug for about two days. On the next day, Mr. Closs refused a scheduled increase in his medication, and for the next two days he refused to take the medication at all. The facility then discharged him to his parole agent.

At his parole violation hearing, Mr. Closs testified that the parole agreement did not require him to take medication, and that he quit taking the medicine because it caused him side effects, including a dry mouth, stiff muscles, and drowsiness. The board concluded that he had violated his parole conditions by failing to comply with "all instructions affecting [his] supervision." As a result, the board revoked Mr. Closs's parole and reduced his good-time credits by two years. *See* S.D. Codified Laws § 24-15-24.

Mr. Closs petitioned for a writ of habeas corpus in state court, *see* S.D. Codified Laws § 21-27-1, contending that his parole revocation violated due process. The state court denied Mr. Closs's petition without opinion, but it granted him a certificate of probable cause to appeal. *See* S.D. Codified Laws § 21-27-18.1. The state supreme court affirmed without opinion the trial court's denial of Mr. Closs's habeas petition. *See Closs v. Weber*, 596 N.W.2d 734 (S.D. 1999).

Mr. Closs then filed a petition under 28 U.S.C. § 2254 in federal court, claiming that he had a right not to take his medication, that his due process rights were therefore violated when the board revoked his parole for failure to take his medication while in a mental health facility, and that state law regarding mental health treatment was not followed. The district court granted Mr. Closs's § 2254 petition in part and ordered that his good-time credits be restored to him. *See Closs v. Weber*, 87 F. Supp. 2d 921, 936 (D. S.D. 1999).

The board, through the warden of the South Dakota State Penitentiary, appeals the district court's order. We reverse.

I.

We review the district court's conclusions of law *de novo*. *See Whitmore v. Kemna*, 213 F.3d 431, 432 (8th Cir. 2000). The relevant facts in this case are undisputed, and therefore, with regard to any claim adjudicated on the merits in state court and rejected there, we may affirm the district court's grant of a writ of habeas corpus only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court," *see* 28 U.S.C. § 2254(d)(1); *see also Evans v. Rogerson*, 223 F.3d 869, 871-72 (8th Cir. 2000). "[C]learly established Federal law, as determined by the Supreme Court," refers to the Supreme Court's holdings, not *dicta*, that were in existence at the time of the state court's decision. *See Taylor v. Williams*, 120 S. Ct. 1495, 1523 (2000). The summary nature of a state court's decision does not affect the applicable standard of review under § 2254(d)(1). *See James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999), *cert. denied*, 120 S. Ct. 994 (2000).

Under § 2254(d)(1), a state court decision is "contrary to" established federal law if it contradicts the governing Supreme Court cases on a question of law or if, when confronting facts "materially indistinguishable," *Williams*, 120 S. Ct. at 1520, from the facts addressed in a Supreme Court decision, it reaches a different result. *See id.* at 1519-20, 1522. We have located no Supreme Court legal determination contradicted by the state court's decision in this case, and the Supreme Court has not confronted facts indistinguishable from those presented here. We therefore conclude that the state court's denial of Mr. Closs's habeas corpus petition was not "contrary to" clearly established federal law, *see* § 2254(d)(1).

Because the state court's decision was not contrary to Supreme Court precedent, we may uphold the district court's grant of relief to Mr. Closs only if the state court decision involved an "unreasonable application" of federal law under § 2254(d)(1). A writ may not issue based on the state court's "unreasonable application" of Supreme Court precedent, *id.*, solely because a federal court concludes that the state court decision erroneously applied the law; the state court's erroneous application of the law "must also be unreasonable," *see Williams*, 120 S. Ct. at 1522. Whether the state court's application of federal law was unreasonable is an objective inquiry. *See id.* at 1521.

## II.

Although the Supreme Court has not addressed the treatment of mentally ill parolees, the Court, prior to Mr. Closs's 1997 parole date, had considered the fourteenth amendment due process rights of state prisoners who are involuntarily treated for mental illness. In *Vitek v. Jones*, 445 U.S. 480, 491 (1980), the Court held that the due process clause requires that "appropriate procedural protections" be observed before a state prisoner may be involuntarily transferred to a mental hospital.

-4-

With regard to medication, the Court held ten years after *Vitek* that a state prison policy may confer upon prisoners "a right to be free from the arbitrary administration" of psychotropic drugs, *Harper*, 494 U.S. at 221, and that the due process clause itself provides inmates "a significant liberty interest in avoiding the unwanted administration" of these drugs, *id.* at 221-22. The Court concluded that the constitutional right to refuse psychotropic medications may be overcome if the inmate has a serious mental illness and is dangerous, and if the treatment is in his or her best medical interest, *see id.* at 227; *see also Riggins v. Nevada*, 504 U.S. 127, 137 (1992). In *Riggins*, 504 U.S. at 135, the Court confirmed that prisoners may not be given such drugs forcibly absent "a finding of overriding justification and a determination of medical appropriateness."

The Court in *Harper*, 494 U.S. at 228, also addressed what process is due to ensure that the decision to medicate an inmate forcibly "is neither arbitrary nor erroneous." Although the Court did not specify the specific procedural protections that are mandated by the due process clause, it concluded that the procedures provided by the state in that case (including notice, a hearing, and decision makers who were not involved in the inmate's treatment) were adequate. *See id.* at 216, 236.

In Mr. Closs's case, as in *Harper*, the state requires that certain procedures be followed before the "involuntary treatment" of inmates with psychotropic medication, *see* S.D. Codified Laws § 24-2-33, and we note that parolees remain "inmate[s]" under state law until their terms of imprisonment expire, *see* S.D. Codified Laws § 24-15-1.1. In addition, the state prohibits the forcible administration of psychotropic medication, absent an emergency, to anyone admitted to a mental institution. *See* S.D. Codified Laws § 27A-12-3.12, § 27A-12-3.23.

III.

The Supreme Court cases that we cite above establish that prisoners have a liberty interest in being free from being forcibly medicated with psychotropic drugs and

that procedural protections must be provided to prisoners before this liberty interest may be taken from them. We believe, however, that the state court could reasonably have concluded that such protections were inapplicable to Mr. Closs's circumstances.

First, we believe that the state court could reasonably have decided that it was not required to rely upon the above cases because Mr. Closs, rather than being forcibly medicated, agreed to treatment that included prescribed medication. Although Mr. Closs correctly stated that the parole agreement did not require him to take prescribed medication, the agreement did provide that he would maintain board-approved mental health treatment. We believe that the state court could have determined as a matter of law that under the facts presented here the parole agreement to maintain "treatment" necessarily included an agreement to take the drugs that were prescribed as an integral part of that treatment. *Cf. Franceschi v. American Motorists Insurance Co.*, 852 F.2d 1217, 1220 (9th Cir. 1988) ("treatment" includes management of illness by administration of drugs). As the district court stated, "the phrase 'psychiatric treatment' certainly includes the possibility of administration of psychotropic medications," *Closs*, 87 F. Supp. 2d at 935. Psychotropic drugs are used to treat schizophrenia, *see Harper*, 494 U.S. at 214, and Mr. Closs had been treated with psychotropic drugs in the past.

In addition, there was no evidence that Mr. Closs was forced to agree to the parole terms or that he objected to the treatment condition when it was imposed, and state law specifically provides that an inmate is "not required to accept a conditional parole," *see* S.D. Codified Laws § 24-15-1.1. The board's decision whether to grant parole to Mr. Closs was discretionary, moreover, *see id.*, and he therefore had no protected liberty interest in receiving it, *see Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *see also Dace v. Mickelson*, 816 F.2d 1277, 1282-83 (8th Cir. 1987) (*en banc*). Thus in return for receiving the discretionary benefit of parole, Mr. Closs agreed, *inter alia*, to maintain

-6-

board-approved treatment for his mental illness. *Cf. Felce v. Fiedler*, 974 F.2d 1484, 1494, 1501 (7th Cir. 1992) (holding that due process clause requires procedural protections before conditioning *mandatory* parole on taking psychotropic drugs, but finding that the right was not "clearly established" at the time of the events in that case). We also note that when Mr. Closs refused to take his medication, psychotropic drugs were not forcibly administered to him.

Although it may be that arbitrary parole conditions violate the Constitution, *see Preston v. Piggman*, 496 F.2d 270, 273, 275 (6th Cir. 1974), we do not believe that under the particular facts presented here, the state court was required to conclude that the board had arbitrarily required Mr. Closs to maintain mental health treatment that included psychotropic medication. The Supreme Court has observed that parolees do not enjoy "the absolute liberty to which every citizen is entitled, but only ... the conditional liberty properly dependent on observance of special parole restrictions," *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Conditions of parole serve the purpose of prohibiting "behavior that is dangerous to the restoration of the individual into normal society," *id.* at 478; *see also* S.D. Codified Laws § 24-15-11 (parole agreement may include "reasonable restrictions ... designed to continue the parolee's rehabilitation"). To accomplish the purposes of parole, those released early from prison may be subjected to substantial restrictions on their conduct. *See Morrissey*, 408 U.S. at 478.

Here Mr. Closs had a long-term diagnosis of schizophrenia and related hospitalizations, and he had previously been placed on psychotropic medication for his condition. His prison physician was concerned that he would have difficulty functioning in society upon his release and recommended that he receive inpatient treatment. Furthermore, there was evidence that when Mr. Closs took his medication his social skills improved and he was less likely to be orally aggressive and to throw things. Given these facts, we do not believe that the state court was required to

conclude that the condition imposed was unconstitutional. *Cf. United States v. Cooper*, 171 F.3d 582, 587 (8th Cir. 1999) (finding "without merit" defendant's challenge to supervised-release condition that required him to undergo mental health treatment if "deemed appropriate," where defendant had history of "major depression, refusal to take anti-depressant medications, and conduct dangerous to himself and others"); *United States v. Wilson*, 154 F.3d 658, 667 (7th Cir. 1998), *cert. denied*, 525 U.S. 1081 (1999) (trial court acted within its discretion by ordering defendant during supervised release to participate in mental health program and take prescribed medications, based on defendant's history of emotional disturbance, erratic behavior, mood swings, and depression); and *United States v. Gallo*, 20 F.3d 7, 9, 11-12, 15 (1st Cir. 1994) (upholding condition that required probationer suffering from paranoid schizophrenia to enter inpatient treatment, and permitting probation revocation after probationer "made it plain," *id.* at 15, that he would not take his medications or submit to inpatient treatment).

Under 28 U.S.C. § 2254(d)(1), we need not decide whether the due process clause actually requires procedural protections before parole is conditioned on the taking of psychotropic medication, because we conclude that the state court, by denying Mr. Closs's habeas petition, did not unreasonably apply Supreme Court precedent. The state court could have concluded that Mr. Closs's parole agreement conditioned his parole on his taking psychotropic drugs if they were prescribed, that when he refused to do so he violated a valid condition of his parole, and that his due process rights were not violated by the parole revocation.

## IV.

With respect to Mr. Closs's loss of good-time credits, under state law the board has the discretion to reduce a parolee's good-time credits once it decides that the parolee  has  violated the conditions of his or her parole. *See* S.D. Codified Laws § 24-15-24. We note that at his parole violation hearing, Mr. Closs testified that he

understood that he could lose his good-time credits if the board concluded that he had violated the terms of his parole agreement, and his good-time credits are not mentioned specifically in his state habeas petition or in his petition under 28 U.S.C. § 2254. Because we believe that the state court could properly have upheld the decision to revoke Mr. Closs's parole, we also conclude that the state court could reasonably have upheld the board's decision to reduce Mr. Closs's good-time credits under S.D. Codified Laws § 24-15-24, a statute that Mr. Closs has not challenged.

## V.

With regard to the retaliation claim referred to by the district court, we conclude after reviewing the record that Mr. Closs did not assert a retaliation claim as a separate ground for relief in either his state habeas petition or his petition under 28 U.S.C. § 2254, and he does not rely on such a claim in this appeal. Insofar as Mr. Closs, by relying on state statutes in state and federal court, attempts to allege a state-law claim, we are limited as a federal habeas court to deciding whether "the Constitution or laws or treaties of the United States" have been violated, *see* § 2254(a); *see also Reed v. Farley*, 512 U.S. 339, 345-46 (1994). We have not found, nor have the parties cited to us, authority under which we may examine issues of state law in this action. *See Cole v. Young*, 817 F.2d 412, 416 (7th Cir. 1987); *see also United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 436-37 (7th Cir. 1982) (neither the habeas corpus statutes nor principles of pendent jurisdiction allow collateral review of questions of state law).

## VI.

For the reasons stated, we reverse the district court's order, and we remand the case to the district court for the entry of an order denying Mr. Closs's petition under 28 U.S.C. § 2254.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.