# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2445

_____

|  |  |  |
|---|---|---|
| John Byron Newman, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Frank X. Hopkins, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 22, 1999

Filed: September 29, 1999

_____

Before RICHARD S. ARNOLD and WOLLMAN,[1] Circuit Judges, and
WOLLE,[2] District Judge.

_____

WOLLMAN, Chief Judge.

John Byron Newman appeals from the district court's denial of his petition for
a writ of habeas corpus filed under 28 U.S.C. § 2254. We reverse.

_____

[1]Roger L. Wollman became Chief Judge of the United States Court of Appeals
for the Eighth Circuit on April 24, 1999.

[2]The Honorable Charles R. Wolle, United States District Judge for the Southern
District of Iowa, sitting by designation.

## I.

During the early morning hours of March 22, 1993, police officers in Lincoln, Nebraska, responded to an emergency call from the victim of a sexual assault. The victim provided the police with a description of her attacker, including the facts that he was wearing a black leather jacket and that he spoke with a Hispanic accent. A few days later, the victim identified Newman as her attacker from a photographic array arranged by the police. Newman was subsequently arrested in Las Vegas, Nevada, and extradited to Nebraska to face criminal charges.

Newman's first trial ended in a mistrial when the jury was unable to reach a verdict, but his second trial resulted in a conviction for first-degree sexual assault. See Neb. Rev. Stat. § 28-319(1). The state trial court sentenced him to twenty-five to fifty years' imprisonment without parole.

Newman's conviction was affirmed on appeal by the Nebraska Court of Appeals, see State v. Newman, 541 N.W.2d 662 (Neb. Ct. App. 1995), and the Nebraska Supreme Court, see State v. Newman, 548 N.W.2d 739 (Neb. 1996). He then filed this petition for a writ of habeas corpus.

## II.

We granted a certificate of appealability on two issues: (1) whether evidence admitted at Newman's trial was seized in violation of the Fourth Amendment, and (2) whether Newman was denied due process of law when the trial court ruled that he would waive his privilege against self-incrimination and subject himself to cross-examination if he presented a voice exemplar to the jury. In reviewing these issues, we apply a presumption of correctness to the state court findings of fact. See 28 U.S.C. § 2254(e)(1). In the circumstances of this case, we may grant the writ only if the state court's adjudication of the federal constitutional claim "resulted in a decision that was

-2-

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. § 2254(d)(1).

## A.

On appeal following his conviction, Newman argued that evidence introduced at his trial -- a black leather jacket that Las Vegas police officers had taken from one of Newman's suitcases -- was seized in violation of the Fourth Amendment. Although the Nebraska Court of Appeals and the Nebraska Supreme Court agreed with Newman that the state trial court had erred in denying his motion to suppress the evidence, both courts held that because the victim gave a detailed description of her attacker's physical characteristics and had identified Newman from a photo in which he was not wearing a black leather jacket, as had two other witnesses, the error in admitting the jacket into evidence was harmless beyond a reasonable doubt. See Newman, 541 N.W.2d at 672-73; Newman, 548 N.W.2d at 749.

The district court held that Newman's Fourth Amendment claim was barred by Stone v. Powell, 428 U.S. 465 (1976), in which the Supreme Court held that a state prisoner may not be granted federal habeas relief on a Fourth Amendment claim if the state has provided for "full and fair litigation" of that claim. See id. at 494. We have held that such a claim is cognizable under section 2254 only if "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1052 (1995). Accordingly, because it is undisputed that Newman was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, the State argues that Stone bars the reassertion of that claim in this action.

Newman counters by contending that <u>Stone</u> does not bar federal court review of a state court's harmless error analysis of a Fourth Amendment violation. This argument presents a nice question, but one which we need not address because, as will be seen, we are holding that Newman is entitled to a new trial, at which the challenged evidence will of course be inadmissible in light of the Nebraska Supreme Court's holding that it was error to deny the motion to suppress.

**B.**

Newman challenges his conviction on the ground that he was denied due process by the trial court's refusal to allow him to present a voice exemplar to the jury without waiving his right against self-incrimination. He argues that because the State can compel him to produce a voice exemplar without violating the Fifth Amendment, due process principles of reciprocity allow him to present a voice exemplar to the jury without waiving his constitutional protections.

The primary issue at trial was whether Newman fit the description of the attacker. An important component of that determination was whether Newman has a Hispanic accent. Newman asked the trial court for permission to present a voice exemplar, consisting of the reading of a neutral statement, to prove that he does not have a Hispanic accent. The trial court sustained the State's objection to the proffered exemplar, ruling that Newman could testify in any voice he wished, so long as he testified under oath and subjected himself to cross-examination. Given this choice, Newman chose not to present a voice exemplar.

The Due Process Clause of the Fourteenth Amendment includes the right of an accused to "a fair opportunity to defend against the State's accusations." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973). This right includes the right to present his own witnesses. <u>Washington v. Texas</u>, 388 U.S. 14, 19 (1967). In <u>Wardius v. Oregon</u>, 412 U.S. 470 (1973), the Supreme Court held that the Due Process Clause barred

-4-

enforcement of a state notice-of-alibi rule that did not provide the defendant reciprocal discovery rights against the government. Id. at 472. The Court noted that although the Due Process Clause says little about the amount of discovery a defendant must be afforded, it does "speak to the balance of forces between the accused and his accuser." Id. at 474.

A defendant may be compelled to provide a voice exemplar over his assertion of a claim of Fifth Amendment privilege. See United States v. Dionisio, 410 U.S. 1, 6-7 (1973); United States v. Wade, 388 U.S. 218, 222-23 (1967); United States v. Leone, 823 F.2d 246, 250 (8th Cir. 1987). Accordingly, we conclude that the Court's recognition in Wardius of a defendant's reciprocal right of discovery, when read in light of the Court's reference to Washington v. Texas, see 412 U.S. at 474 n.6, reflects an expression of clearly established federal law that a defendant is entitled to introduce a voice exemplar without waiving his Fifth Amendment privilege against self-incrimination.

The Nebraska Supreme Court recognized as much when, after discussing Wade, Dionisio, and Schmerber v. California, 384 U.S. 757 (1966), it held that "if relevant and reliable, a voice exemplar may be offered into evidence by a criminal defendant without waiving his or her Fifth Amendment privilege against self-incrimination." Newman, 548 N.W.2d at 752. The court went on to hold that the trial court "erred in effectively ruling that Newman's offer of a voice exemplar would waive his Fifth Amendment privilege and subject him to cross-examination." Id. Addressing the relevancy component of the test of admissibility, the court found that in view of the conflicting testimony with respect to whether Newman spoke with a Hispanic accent, "the presentation of a voice exemplar would have been relevant evidence going to the issue of identity." Id.

The court then addressed the question of the reliability of the proffered exemplar, referring to decisions which have noted the fact that by its very nature voice exemplar

evidence is different from other common types of exemplar or demonstrative evidence. See, e.g., People v. Scarola, 741 N.Y.2d 769, 525 N.E.2d 728, 530 N.Y.S.2d 83 (1988); United States v. Esdaille, 769 F.2d 104 (2d Cir. 1985). See Newman, 548 N.W.2d at 752. Contrasting voice exemplar evidence with physical evidence such as scars and tattoos, the court said, "In contrast, voice exemplar evidence is relatively easy to feign. An accent can be exaggerated or muted through a person's conscious efforts, such as avoiding particular words that one cannot pronounce without an accent." Id. The court concluded that "[s]ince Newman made no offer to establish the genuineness of the exemplar, it would have been properly excluded as irrelevant. That is to say, in the words of the State's objection, the conditions under which Newman spoke to the victim could not be reproduced."[3] Id. Thus, reasoned the court, because the proffered exemplar would have been properly excluded on other grounds, Newman suffered no prejudice as a result of the trial court's erroneous ruling on the Fifth Amendment issue.

The question, then, is whether the Nebraska Supreme Court's failure to remedy the denial of Newman's right to present the voice exemplar without waiving his Fifth Amendment right against self-incrimination resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. See Long v. Humphrey, No. 98-3409, slip op. at 4 (8th Cir. July 14, 1999). We conclude that it did, for the effect of the court's decision was to forever foreclose Newman from proffering a voice exemplar that might satisfy the court's standard of reliability.

---

[3]With all due respect, we do not read the State's objection as having been based upon the ground stated by the court. Rather, as we read the record, the State argued that, contrary to the position taken by Newman's counsel, the Supreme Court's decision in Wade was not on point in that that case involved words spoken by a defendant during a lineup and not during trial.

-6-

The State argues that the state court's decision constituted a ruling on a matter of state evidentiary law, a question that is ordinarily not cognizable in a section 2254 action. See, e.g., Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir. 1988). We disagree. We do not view the Nebraska Supreme Court's holding as constituting a ruling on the evidentiary insufficiency of Newman's proffered exemplar, for Newman was never given an opportunity to make a showing of reliability. Once the trial court ruled that Newman would be required to waive his Fifth Amendment privilege against self-incrimination, the issue was closed, for there would have been no point in Newman's attempting to make such a showing in the face of that ruling. Rather, we read the Nebraska Supreme Court's statement that "the conditions under which Newman spoke to the victim could not be reproduced" as a *per se* rule of exclusion akin to that which the United States Supreme Court has held infringes impermissibly upon a defendant's right to testify on his own behalf. See Rock v. Arkansas, 483 U.S. 44, 56-62 (1987). In any event, even if the Nebraska Supreme Court's ruling is viewed as one touching solely upon an evidentiary matter, we conclude that by in effect precluding Newman from attempting to make a showing of the voice exemplar's reliability, it infringed upon Newman's constitutional right to present a defense and thus is reviewable in an action for federal habeas relief. See Wallace v. Lockhart, 701 F.2d 719, 724 (8th Cir. 1983).

There remains the question whether the error in requiring Newman to waive his Fifth Amendment privilege as a condition of introducing a voice exemplar was harmless. See Olesen v. Class, 164 F.3d 1096, 1100 (8th Cir. 1999). Because the state courts did not review the claim for harmless constitutional error, we apply the stricter standard set forth in Chapman v. California, 386 U.S. 18 (1967), rather than the more deferential standard enunciated in Brecht v. Abrahamson, 507 U.S. 619 (1993). See Harrington v. Iowa, 109 F.3d 1275, 1279 (8th Cir. 1997); Orndorff v. Lockhart, 998 F.2d 1426, 1430 (8th Cir. 1993). Under Chapman, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24.

As the Nebraska Supreme Court stated, "The central issue at trial was the identity of the perpetrator of the crime." Newman, 548 N.W.2d at 752. Whether Newman has a Hispanic accent was an important factor in determining whether he fit the description of the attacker. It is of more than passing significance that Newman's first trial ended in a mistrial because the jury could not reach a unanimous verdict. Had Newman been afforded his due-process right to introduce the voice exemplar, the jury might well have reached a different conclusion in the second trial. Therefore, we cannot say that the trial court's erroneous ruling was harmless beyond a reasonable doubt. In so ruling, we recognize, as noted above, that the Nebraska Supreme Court held that what it considered to be overwhelming evidence rendered harmless beyond a reasonable doubt the erroneous receipt into evidence of the black leather jacket, which the court viewed as merely cumulative physical evidence. We conclude that in the circumstances of this case the denial of the right to present what would have been exculpatory evidence had consequences far more serious than the erroneous receipt of inculpatory evidence of only marginal probative force. Newman's claimed lack of a Hispanic accent was apparently the only defense he had to offer. There may be cases in which the wrongful exclusion of such evidence might be considered harmless, but we conclude that this is not one of them.

Although on retrial Newman will be entitled to offer a voice exemplar without waiving his privilege against self-incrimination, he will of course be required to establish its reliability. See Esdaille, 769 F.2d at 107 (holding that proposed voice exemplar was properly excluded as unreliable). Whether he is able to do so will be a matter for the state courts to decide.

The judgment denying the petition for writ of habeas corpus is reversed, and the case is remanded to the district court with instructions to enter a writ discharging Newman from custody unless the state, within a reasonable period of time, grants him a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.