# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2445

_____

| | | |
|---|---|---|
| John Byron Newman, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Frank X. Hopkins, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  July 3, 2000

Filed:  April 27, 2001

_____

Before WOLLMAN, Chief Judge, RICHARD S. ARNOLD, Circuit Judge, and
WOLLE,[1] District Judge.

_____

WOLLMAN, Chief Judge.

In <u>Newman v. Hopkins</u>, 192 F.3d 1132 (8th Cir. 1999) (<u>Newman I</u>), we reversed
the district court's denial of a writ of habeas corpus to John Byron Newman, who is
serving a twenty-five to fifty-year sentence on his conviction in a Nebraska state court
on a charge of first-degree sexual assault.  The United States Supreme Court granted
certiorari, vacated our judgment, and remanded the case for further consideration in

_____

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern
District of Iowa, sitting by designation.

light of the Court's holding in <u>Williams v. Taylor</u>, 529 U.S. 362, 404-05 (2000). <u>Hopkins v. Newman</u>, 529 U.S. 1084 (2000). Having reviewed the case in the light of <u>Williams</u>, we adhere to our holding in <u>Newman I</u>.

## I.

The facts of this case are set out more fully in <u>Newman I</u>. At trial, Newman challenged the victim's identification of him as her attacker from a photo line-up. Prior to picking out Newman's picture, the victim had given police a physical description of her attacker and told them that he spoke with a Hispanic accent. Newman sought to offer a voice exemplar to demonstrate that he had no accent, proposing that he be permitted to read a neutral statement aloud in order to allow the jury to hear his speaking voice. After the trial court ruled that introducing the voice exemplar would waive his Fifth Amendment protection against self-incrimination and subject him to cross-examination, Newman chose not to offer the exemplar.

On appeal, the Nebraska Supreme Court ruled that the trial court erred in holding that offering the voice exemplar would have waived Newman's Fifth Amendment rights, but concluded that the error did not require reversal because Newman had made no offer of proof that the voice exemplar would be reliable, because an accent was easily manipulated by a speaker and because the conditions under which the victim heard her attacker's voice could not be replicated. The voice exemplar, it concluded, was so unreliable as to be inadmissible under Nebraska's evidentiary rules. <u>State v. Newman</u>, 548 N.W.2d 739, 752 (Neb. 1996). The district court, construing the holding as a straightforward evidentiary ruling, denied Newman habeas relief. We concluded that the Nebraska Supreme Court's ruling was in effect a <u>per se</u> exclusion of voice exemplar evidence that infringed on Newman's right to present his defense and remanded the case to the district court with instructions to grant the habeas petition and order that Newman be released or be given a new trial.

## II.

Williams v. Taylor governs the degree of deference that must be afforded to state court determinations on the merits in federal habeas proceedings concerning state prisoners under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which amended 28 U.S.C. § 2254(d)(1).[2]  529 U.S. 402-03.  We decided Newman I under AEDPA, but before the Court's clarifying decision in Williams.  Thus, the sole question before us on remand is whether, in light of the Court's articulation of the Williams standard, we correctly determined that Nebraska's per se exclusion of Newman's voice exemplar entitled Newman to habeas relief.

In Newman I, we framed our inquiry on review under AEDPA as "whether the Nebraska Supreme Court's failure to remedy the denial of Newman's right to present the voice exemplar without waiving his Fifth Amendment right against self-incrimination resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."  192 F.3d at 1136.  Thereafter, the Court announced the more elaborate Williams standard:  A state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court only through a showing that the state court's decision was either (1) contrary to, or (2) an unreasonable

---

[2]As amended, section 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) .

application of, clearly established federal law as determined by the Supreme Court. Williams, 529 U.S. at 404-05. Because the Supreme Court has not considered the question whether a defendant has a right to present a voice exemplar in his own defense, the "contrary to" clause is not implicated in this case, and thus habeas relief was appropriate only if the ruling of the Nebraska Supreme Court amounted to an unreasonable application of federal law clearly established by the Supreme Court. See Closs v. Weber, 238 F.3d 1018, 1020 (8th Cir. 2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "Stated simply, a federal court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 410. A state court decision does not meet the AEDPA standard for unreasonableness simply by virtue of being erroneous. Id. In reading the "contrary to" and "unreasonable application of" language in AEDPA as two discrete sources of authority to review a state court's determinations, id. at 404-05, the Court acknowledged that "[a] state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular case certainly would qualify" as an unreasonable application of federal law. Id. at 407-08.

In holding that the voice exemplar was too unreliable to be admitted as demonstrative evidence under Nebraska law, the Nebraska Supreme Court ruled that

> voice exemplar evidence by its very nature is different from other common types of exemplar or demonstrative evidence . . . . [V]oice exemplar evidence is relatively easy to feign. An accent can be exaggerated or muted through a person's conscious efforts, such as avoiding particular words that one cannot pronounce without an accent. Since Newman made no offer to establish the genuineness of the

-4-

exemplar, it would have been properly excluded as irrelevant. That is to say . . . the conditions under which Newman spoke to the victim could not be reproduced.

State v. Newman, 548 N.W.2d at 752.

In Newman I, we held that this holding amounted to a per se bar on a defendant's presentation of voice exemplar evidence, because the reliability determination was based not on an individualized inquiry into the facts and circumstances of Newman's proposed voice exemplar but rather on characteristics common to all voice exemplars. 192 F.3d at 1136. On remand, we hold that Nebraska's adoption of a per se exclusion of voice exemplars constitutes an unreasonable application of clearly established federal law.

Although the Supreme Court has not addressed the question whether a defendant has a constitutional right to present a potentially exculpatory voice exemplar, the right to present favorable evidence to a jury is clearly established by the Court's precedent. "Our cases establish, at a minimum, that criminal defendants have the right . . . to put before a jury evidence that might influence the determination of guilt." Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987). The role of evidentiary rules in the adversarial process is to "govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case." Taylor v. Illinois, 484 U.S. 400, 410-11 (1988). Although "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence," id. at 410, "[t]he right of the defendant to present evidence 'stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the states,'" id. at 409.

-5-

Given that a defendant's right to present evidence stands on equal footing with other Sixth Amendment rights, the Court's holdings concerning the blanket exclusion of evidence that tends to impeach the state's witnesses are of special relevance on the question whether Nebraska's per se rule constitutes an unreasonable application of federal law. In Delaware v. Van Arsdall, 475 U.S. 673 (1986), the Court held that a criminal defendant who was not permitted to offer evidence that a witness was biased by the state's dismissal of charges against him "states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." 475 U.S. at 680. In Davis v. Alaska, 415 U.S. 308 (1974), the Court concluded that a defendant was entitled to present evidence of a witness's juvenile records despite a state policy of sealing such records, where effective impeachment of the witness required that "defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of witnesses." 415 U.S. at 318.

In United States v. Scheffer, 523 U.S. 303, 315 (1998), the Court noted that it had declared to be unconstitutional categorical exclusions of evidence that "significantly undermined fundamental elements of the defendant's case." The Court has thus struck down per se exclusions that categorically excluded a defendant's hypnotically refreshed testimony, Rock v. Arkansas, 483 U.S. 44, 62 (1987), that prevented codefendants or coparticipants in a crime from testifying for one another, Washington v. Texas, 388 U.S. 14, 23 (1967), and that prevented a defendant from impeaching his own witness and from introducing evidence that the witness had confessed to having committed the crime of which the defendant was accused, Chambers v. Mississippi, 410 U.S. 284, 302 (1973). In Scheffer, the Court concluded that the President's adoption of Military Rule of Evidence 707, which excludes polygraph evidence in all military trials, was "a rational and proportional means of advancing the legitimate interest in barring unreliable evidence." 523 U.S. at 312. In so ruling, the Court noted that "the . . . members [of the general court-martial] heard

-6-

all the relevant details of the charged offense from the perspective of the accused, and the Rule did not preclude him from introducing any factual evidence. Rather, respondent was barred merely from introducing expert opinion testimony to bolster his own credibility." Scheffer, 523 U.S. at 317.

In contrast to the situation in Scheffer, the Nebraska Supreme Court's imposition of a categorical bar on the introduction of voice exemplar evidence prevented Newman from offering factual evidence and significantly undermined his ability to establish the essential elements of his defense. See Taylor, 484 U.S. at 408 n.13. As the Nebraska court recognized, the factual question whether Newman spoke with a Hispanic accent was relevant and potentially exculpatory. Unlike the polygraph evidence at issue in Scheffer, the record does not reveal that a voice exemplar requires the introduction of expert testimony, nor is there any indication that the determination of its reliability lies beyond the ability of lay jurors to evaluate. We recognize full well that the state of Nebraska has a legitimate interest in the reliability of evidence, and if the facts and circumstances surrounding a particular voice exemplar make it so unreliable as to render it inadmissible under Nebraska's evidentiary rules, a defendant would have no absolute right to introduce it. See Chambers, 410 U.S. at 302. Rather than balancing the state's concern with the defendant's Sixth Amendment rights, however, Nebraska's per se rule bars not only unreliable evidence but also evidence that may, in individual cases, be reliable. This the state may not constitutionally do, for "[a] State's legitimate interest in barring unreliable evidence does not extend to per se exclusions that may be reliable in an individual case." Rock, 483 U.S. at 61. Nebraska's per se exclusionary rule impermissibly requires the defendant to "bear the full burden of vindicating the State's interest" in limiting the type of evidence that may be submitted to a jury. Davis, 415 U.S. at 320. The decisions of the Supreme Court clearly establish that such a per se rule is unconstitutional. Rock, 483 U.S. at 61. We therefore conclude that the Nebraska court's per se exclusion of voice exemplar evidence is an unreasonable application of clearly established federal law.

We adhere to our holding in <u>Newman I</u>. Accordingly, the judgment denying the petition for writ of habeas corpus is reversed, and the case is remanded to the district court with instruction to enter a writ discharging Newman from custody unless the state, within a reasonable period of time, grants him a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.