**Teddie Lee FISHER, Petitioner,**

v.

**State of IOWA, Respondent.**

No. 4:07–cv–0212–JAJ.

United States District Court, S.D. Iowa, Central Division.

June 18, 2008.

Teddie Lee Fisher, Newton, IA, pro se.

Thomas William Andrews, William A. Hill, Iowa Department of Justice, Robert P. Ewald, Iowa Attorney General, Des Moines, IA, for Respondent.

## ORDER

JOHN A. JARVEY, District Judge.

This matter comes before the Court based on Teddie Fisher's ("Fisher") May 15, 2007, Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) and his January 28, 2008, Motion to Appoint Counsel (Dkt. No. 15). Fisher challenges a conviction in state court for second-degree sexual abuse. In his petition, Fisher claims that trial counsel was ineffective because he failed to investigate and present reports of the victim's prior claims of sexual abuse; failed to investigate and present testimony from the victim's step-father; and failed to object to the prosecutor's allegedly improper comments during closing arguments. Fisher also claims that appellate counsel was ineffective by filing an inadequate, *Anders* brief. Last, Fisher argues that the prosecution withheld exculpatory evidence of the victim's prior allegations of sexual abuse. Fisher argues that this deprived him of his due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). For the following reasons, this Court denies Fisher's application as well as his Motion to Appoint Counsel.

## I. PROCEDURAL BACKGROUND

### A. Trial

Fisher was charged in a one-count information with second-degree sexual abuse in violation Iowa Code Section 709.3. A jury convicted Fisher on January 20, 2000 of second-degree sexual abuse in Washington County district court. *State v. Fisher*, No. 00–231, FECR 005132. The Iowa District Court in and for Washington County sentenced Fisher to a term of twenty-five years on February 21, 2000.

### B. Direct Appeal

Fisher filed a notice of appeal on February 24, 2000. The State Appellate Defender's Office was appointed to represent Fisher. Fisher's attorney filed a motion to withdraw as counsel on September 22, 2000 and the Supreme Court of Iowa granted the motion on December 21, 2000. On the same date, the Supreme Court dismissed the appeal as frivolous. The Court issued procedendo on December 26, 2000.

### C. State Application for Post–Conviction Relief

Fisher filed an application for post-conviction relief on January 18, 2002. Fisher amended his application on February 24, 2004. An evidentiary hearing was held before Judge Dan F. Morrison on September 20, 2004. Judge Morrison then recused himself and a second hearing was held before Judge Michael Mullins on May 4, 2005. Fisher argued that his counsel was ineffective because he failed to investigate the victim's previous allegations of

sexual abuse, and to investigate and present testimony from the victim's stepfather. He also alleged ineffectiveness of appellate counsel. Fisher claimed *Brady* violations, alleging that the prosecutor failure to disclose exculpatory information.

The Iowa district court in and for Washington County denied and dismissed the claims on July 28, 2005. Fisher filed a notice of appeal with the Iowa Court of Appeals on August 19, 2005. Fisher presented the same arguments before the Court of Appeals—(1) ineffective assistance of trial counsel and (2) *Brady* violations. In addition, Fisher asserted a due process claim, alleging prosecutorial misconduct based on statements the prosecutor made during closing argument.

The Court of Appeals affirmed the district court on January 31, 2007. *Fisher v. State*, No. 05–1408, 2007 WL 254905 (Iowa App. Jan. 31, 2007). The Court of Appeals found that Fisher did not preserve his claim regarding the prosecutor's allegedly improper statements during closing arguments because he did not show sufficient reason as to why they were not raised on direct appeal. *Id.* at *3. The court reached the merits of his ineffective assistance of counsel claims because they need not be raised on direct appeal. *Id.* The court also reached the merits of his *Brady* claim, finding that Fisher was arguably unaware of the alleged violation at the time of the direct appeal. *Id.* at *4.

The court found no *Brady* violation, stating that "trial counsel was or should have been aware of at least one of the prior allegations of sexual abuse." *Id.* The court also found that Fisher had not shown that prosecutors suppressed evidence, or that evidence was material to the issue of guilt. *Id.* The court also concluded that Fisher's ineffective assistance of counsel

claims failed because he could not show that the alleged ineffectiveness was prejudicial. *Id.* at *5–6.

### D. Federal Application for a Writ of Habeas Corpus

On May 15, 2007, Fisher filed a *pro se* application for a writ of habeas corpus. In his application, Fisher asserted five grounds for relief: (1) ineffective assistance of trial counsel for failure to investigate prior allegations of sexual abuse; (2) *Brady* violations by failing to turn over reports of prior allegations of sexual abuse; (3) ineffective assistance of trial counsel for failure to present specific witnesses; (4) ineffective assistance of trial counsel for failure to object to the prosecutor's remarks during closing argument; and (5) ineffective assistance of appellate counsel for not preserving an issue on direct appeal and filing a brief that violates *Anders v. California*. On July 11, 2007, the respondent filed an answer to Fisher's application for writ of habeas corpus. (Dkt. No. 6). On September 12, 2007, Fisher filed a brief on the merits. (Dkt. No. 9). On October 3, 2007, the State of Iowa filed a responsive brief. (Dkt. No. 10). On January 28, 2008, Fisher filed a motion to appoint counsel. (Dkt. No. 15).

### II. FACTUAL BACKGROUND [1]

The victim, A.E., testified that on April 9, 1999, she spent the night at her friend M.F.'s home. M.F.'s parents are Teddie and Brandy Fisher. The Fisher's run a day-care business and A.E. was one of the children in their charge. While the two girls were sleeping, A.E. awoke to find Teddie Fisher in bed with the two of them. She testified that her shirt was raised and her panties were around her ankles. A.E. said that when she went to bed, she was

---

1. The facts and evidence are summarized in the light most favorable to the verdict. *Liggins v. Burger*, 422 F.3d 642, 647 (8th Cir.

2005); *Hendricks v. Lock*, 238 F.3d 985, 986 (8th Cir.2001).

lying in the middle of the bed but woke up at the edge of the bed with her legs hanging off of it and Fisher kneeling beside the bed. A.E. then testified that he was "licking [her] crotch area." (Tr. 8; Appx. 25). He also licked her "bra area." (Tr. 8; Appx. 25). She told him to stop. Fisher then asked her if he was hurting her and began apologizing. He told A.E. "he was just looking for blankets to make sure [they] were warm." (Tr. at 8; Appx. 25). At the time of the incident, Fisher was wearing jeans and no shirt. A.E. testified that when he stood up, he zipped up his jeans. Fisher testified that he was in the room for a total of five minutes. (Tr. 41; Appx. 58).

After the incident, A.E. went back to sleep. In the morning, she told M.F. about what happened, but asked her not to tell her mother, Brandy Fisher. A.E.'s step-father picked her up from the Fisher's home that morning and A.E. did not mention the incident to him. When she returned home, she told her mother what happened. After her parents argued about who was going to call the police, her father called the police.

On April 19, 1999, A.E. was interviewed at the St. Luke's Child Protection Center by advocates trained to interview younger children. The interview was videotaped. Washington County Sergeant Lyle Hansen, the officer assigned to the case, later reviewed the videotape. After viewing it, Hansen went to Fisher's home and asked him to come to the sheriff's station. He originally told Fisher that he wanted to interview him in connection with a burglary. Hansen interviewed Fisher at the Washington Public Safety Center, in the basement of the Law Center.

Hansen did not tape record the interview because, according to him, it makes suspects nervous and unwilling to talk. (Tr. at 37; Appx. 54). Hansen Mirandized Fisher and discussed his rights with him.

He then shut the door and began questioning Fisher about the alleged sexual abuse. Hansen testified that Fisher said the following:

> He stated that it did occur on Friday the 9th of April, 1999. [A.E.] apparently came over to the house to spend the night with his stepdaughter, and they were up in his stepdaughter's bedroom. And he decided to go up there to make sure that there was plenty of heat getting into the room due to the fact he stated that there was no register vent in the bedroom.

> He said once he entered the inside the bedroom, he noticed the two girls. Took [A.E.] down to the edge of the bed so her legs would be hanging over it and then pulled her panties or pants either to the side or down. He couldn't remember exactly how. And then he stated he started to lick her and then work his way down her vaginal area.

> . . .

> He stated that next she woke up and made the statement for him to stop or to stop doing that. He stated at that point he did immediately stop and stated that he was sorry.

(Tr. 40–41; Appx. 57–58). Fisher also told Hansen that he knew he had a problem and "thought the problem was taken care of and it wouldn't happen anymore." (Tr. 41; Appx. 58). Hansen then asked Fisher to draw a diagram of the room, which he did. (Ex. 2). The diagram showed where A.E. and M.F. were at the time he walked into the room and where A.E. was at the time of the sex act. (Tr. 45; Appx. 62). Fisher also indicated where he was in relation to the girls.

At the end of the interview, Fisher was arrested. Fisher was later charged with second-degree sexual abuse in violation Iowa Code Section 709.3.

### III. STANDARDS OF REVIEW

In his application for a writ of habeas corpus, Fisher claims that his Sixth Amendment rights were violated because trial and appellate counsel were ineffective. Fisher also claims that the prosecutor withheld exculpatory information, violating his due process rights pursuant to *Brady v. Maryland.*

Title 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Thus, "[28 U.S.C. § ] 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact—and treats each in separate subparagraphs." *Weaver v. Bowersox,* 241 F.3d 1024, 1029 (8th Cir.2001). Fisher's claims implicate both § 2254(d)(1) and (d)(2).

#### A. Standard of review under 28 U.S.C. § 2254(d)(1)

Under 28 U.S.C. § 2254(d)(1), a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only through a showing that the state court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). The Supreme Court's opinion in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), explains the meaning of those statutory concepts and the degree of deference that must be afforded to state court determinations on the merits in federal habeas corpus proceedings concerning state prisoners under the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"). *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Newman v. Hopkins,* 247 F.3d 848, 850–52 (8th Cir. 2001) (discussing the effect of *Williams* ); *Siers v. Weber,* 259 F.3d 969, 972–73 (8th Cir.2001) (same); *see also Ryan v. Clarke,* 387 F.3d 785, 790 (8th Cir.2004) (stating only limited and deferential review of underlying state court decisions in habeas corpus cases is permitted).

Under *Williams,* a state-court decision can be "contrary to" Supreme Court precedent in one of two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams,* 529 U.S. at 405, 120 S.Ct. 1495. Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' ... refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495.

An "unreasonable application" of Supreme Court precedent can also arise in one of two ways. The Supreme Court explained:

First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state pris-

oner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407, 120 S.Ct. 1495 (citing *Green v. French*, 143 F.3d 865, 869–70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involving an unreasonable application of ... clearly established federal law.'" *Id.* at 407–08, 120 S.Ct. 1495. Notably, however,

> Under [28 U.S.C.] § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas [corpus] court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 411, 120 S.Ct. 1495.

Applying these standards to the present case, the court's inquiry must be whether the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, whether the Iowa court correctly identified the applicable principles of federal law and then unreasonably applied that law to the facts of Fisher's claims. *See, e.g., Rousan v. Roper*, 436 F.3d 951, 955–56 (8th Cir.2006) (discussing applicable standard); *Newman*, 247 F.3d at 850–52 (same); *Weaver v. Bowersox*, 241 F.3d 1024, 1029–30 (8th Cir.2001) (same); *Closs v. Weber*, 238 F.3d 1018, 1020 (8th Cir. 2001) (same); *Copeland v. Washington*, 232 F.3d 969, 973 (8th Cir.2000) (same).

### B. Standard of review under 28 U.S.C. § 2254(d)(2)

"Claims of factual error are subjected to the standard enunciated in [28 U.S.C.] § 2254(d)(2); [28 U.S.C. § ] 2254(e)(1) then establishes a presumption of correctness in favor of state court findings of fact."[2] *Weaver*, 241 F.3d at 1030. Accordingly, the court's review presumes that the Iowa courts found the facts correctly unless Fisher rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Weaver*, 241 F.3d at 1030 ("[O]n habeas [corpus] review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings ..."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030.

### C. Requirement of Exhaustion

A petitioner, before obtaining federal habeas corpus review of his or her state confinement, must first "exhaust" his or her federal claims in the appropriate state forum. 28 U.S.C. § 2254(b)(1).[3] A

---

**2.** 28 U.S.C. § 2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

**3.** 28 U.S.C. § 2254(b)(1) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State, or

(B)(I) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

petitioner has exhausted his or her state remedies when he or she has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. *Vasquez v. Hillery,* 474 U.S. 254, 257, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438; *Miller v. Lock,* 108 F.3d 868, 871 (8th Cir.1997); *Ashker v. Leapley,* 5 F.3d 1178, 1179 (8th Cir.1993); *McDougald v. Lockhart,* 942 F.2d 508, 510 (8th Cir.1991); *see also* 28 U.S.C. § 2254(c).[4] In Iowa, exhaustion requires a petitioner to seek discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an appeal argument. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845–48, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (abrogating *Dolny v. Erickson,* 32 F.3d 381 (8th Cir.1994)).

Fisher appropriately sought discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals' denied his petition on January 31, 2007. The Iowa Supreme Court declined review of Fisher's post-conviction claims on March 27, 2007. (Dkt. No. 1, Ex. C). Thus, Fisher has given the highest state court the possibility to resolve his claims.

■ The fair presentment component of the exhaustion requirement compels a petitioner to affirmatively:

[R]efer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.

*Ashker,* 5 F.3d at 1179 (quotations and citations omitted); *accord Thomas v. Wyrick,* 622 F.2d 411, 413 (8th Cir.1980). A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas corpus application have been properly raised in the prisoner's state court proceedings. *Keithley v. Hopkins,* 43 F.3d 1216, 1217 (8th Cir.1995); *Flieger v. Delo,* 16 F.3d 878, 884 (8th Cir.1994); *see also Keeney v. Tamayo–Reyes,* 504 U.S. 1, 8, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (full and fair presentment of claims to the state court requires "full factual development" of the claims in that forum); *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir.1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.").

■ "The purpose of the fair presentation component of the exhaustion requirement is to give state courts the first opportunity to review federal constitutional issues and to correct federal errors made by the state's trial courts." *Laws v. Armontrout,* 834 F.2d 1401, 1412 (8th Cir. 1987); *see also Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (same). If a petitioner has not fully presented his or her federal claims in state court, the claims are barred in federal court and must be dismissed, unless the petitioner can either show both good cause for his or her failure to present the claims in state court and actual prejudice as a result of the alleged constitutional violation or demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Keithley,* 43 F.3d at 1218; *Maynard v. Lockhart,* 981 F.2d 981, 984 (8th Cir.1992); *Buckley v. Lockhart,* 892 F.2d 715, 718 (8th Cir.1989).

---

4. 28 U.S.C. § 2254(c) provides:
An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Here, Fisher has presented the same issues as he presented to the Iowa Court of Appeals. Therefore, he meets both parts of the exhaustion requirement—he has appealed to the highest state court necessary and has presented the same claims to the federal court as he did to the state court.

## IV. DISCUSSION

### A. Ineffective Assistance of Counsel

■ The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

*Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (quoting *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). A criminal defendant is also entitled to effective assistance of counsel on a first appeal as of right. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir.1993); *Estes v. United States*, 883 F.2d 645, 648 (8th Cir. 1989).

■ The United States Supreme Court reformulated the *Strickland* test for constitutionally ineffective assistance of counsel in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), and the Eighth Circuit Court of Appeals has applied that test.

Counsel is constitutionally ineffective under *Fretwell* when: (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect.

*English v. United States*, 998 F.2d 609, 613 (8th Cir.1993) (citing *Lockhart*, 506 U.S. at 364, 113 S.Ct. 838).

■ Where conduct does not prejudice the defendant, the court need not address the reasonableness of that conduct. *United States v. Williams*, 994 F.2d 1287, 1291 (8th Cir.1993). To determine whether there is prejudice, the court examines whether the result has been rendered "unreliable or fundamentally unfair" as the result of counsel's performance. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *West v. United States*, 994 F.2d 510, 513 (8th Cir.1993). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. *Id.* at 372, 113 S.Ct. 838; *West v. United States*, 994 F.2d 510, 513 (8th Cir.1993) (quoting *Fretwell*). Prejudice does not exist unless "there is a reasonable probability that, but for counsel's ... errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Williams*, 994 F.2d at 1291 (quoting *Strickland*).

#### 1. Failure to Investigate Prior Allegations of Sexual Abuse by the Victim

■ The Iowa Court of Appeals, in affirming Fisher's denial of post-conviction relief, conducted a *de novo* review of the record. The court first discussed trial counsel's alleged error for not investigating the victim's prior allegations of sexual abuse. Fisher asserts that two reports relating to a 1996 allegation and a 1998 allegation should have been investigated and presented at trial. Applying the *Strickland* standard, the Iowa court found no prejudice because the reports were like-

ly inadmissible under Iowa's rape-shield laws. Iowa's rape-shield laws prohibit the admission of prior sexual conduct unless it is a "prior false claim[ ] of sexual activity." *State v. Baker*, 679 N.W.2d 7, 10 (Iowa 2004); *see also* Iowa R. Evid. 5.412. As the Iowa Court of Appeals points out, a defendant who wishes to admit evidence of past sexual conduct must make a threshold showing of falsity by proving to the trial court that the statements are false by a preponderance of evidence. Here, Fisher has not made such a showing. The post-conviction trial court found "absolutely no evidence to support the notion that the allegation was false, only that it was not prosecuted." (Appx. 313).

■ Fisher now asks this court to set aside the Iowa courts' factual findings. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Wiggins v. Smith*, 539 U.S. 510, 540–41, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). The only evidence Fisher produces is Officer Hansen's statement that "there was a lot of similarities into her prior sexual abuse allegations and the allegations she was making at this time." (Appx. Ex. 3). The post-conviction trial court found this evidence was "a far cry from evidence that A.E.'s allegation against either man was false." *Id.* This Court agrees—this evidence does not arise to the level of clear and convincing and therefore, the state court's factual findings are presumed correct. Unable rebut the presumption favoring the Iowa court's factual finding on the falsity issue, Fisher is unable to show he was prejudiced. The Court finds that the Iowa Court of Appeals did not unreasonably apply *Strickland* to the facts of Fisher's claim, nor was their conclusion contrary to federal law. For that reason,

Fisher is not entitled to habeas relief on this ground.

### 2. Failure to Present Testimony From the Victim's Step–Father

■ Next, the Iowa court applied the *Strickland* standard to Fisher's allegation that trial counsel was ineffective for not presenting the testimony of A.E.'s step-father, Matt Simone. Fisher argues that Simone would have testified that A.E. seemed normal when he picked her up from the Fisher home on the morning after the incident. He also would have testified that A.E. did not tell him about the abuse. Fisher argues that "[j]ust as traumatized victim is evidence of abuse, the absence of trauma also shows that the abuse did not occur." (Pet. Br. at 21). Such testimony would undermine A.E.'s credibility, Fisher argues, to the point that the jury may have rendered an alternative verdict. In other words, this evidence is prejudicial.

The Iowa Court of Appeals found that Simone's testimony would be "largely cumulative of A.E.'s own testimony. A.E. explained that she did not tell Simone about the incident because she 'didn't think he would really listen,' and indicated that she was concerned about making him angry." *Fisher*, 2007 WL 254905, at *6. "Moreover, the mere observation that A.E. was 'acting normally' the following morning is not sufficient to undermine confidence in the outcome of the proceedings." *Id.* The court of appeals concluded that Fisher failed to show prejudice. This Court finds that the court correctly stated and reasonably applied the *Strickland* standard to the facts presented. The court's conclusion was not contrary to federal law, as interpreted by the Supreme Court.

### 3. Failure to Object to Prosecutorial Misconduct During Closing Arguments

Last, Fisher alleges ineffective assistance of trial counsel for failing to object to statements made by the prosecutor during closing arguments. Fisher contends that the prosecutor said, "[A. E.] couldn't have made up this accusation because nothing like this has ever happened to her before." (Pet. Br. at 22). The closing arguments were not recorded, so Fisher had no transcript to rely upon. Instead, he relies on the testimony of two witnesses at his post-conviction hearing, who stated that the prosecutor made the statement. Such a statement, Fisher argues, constitutes prosecutorial misconduct because (1) it was untrue; (2) the prosecutor improperly vouched for A.E.'s credibility; and (3) the statements were evidentiary. The prosecutor denied making the statements and trial counsel has no recollection of the statements.

The district court in post-conviction proceedings found that "Fisher's recollections were 'suspect'" and that Fisher's witnesses were "weak." *Fisher*, 2007 WL 254905, at *6. The Iowa Court of Appeals affirmed these findings. *Id.* In concluding that Fisher failed to state a claim for ineffective assistance of counsel, the court of appeals "placed more weight upon the testimony of the prosecutor and defense counsel than we do upon Fisher's self-serving assertions or the testimony of his witnesses." *Id.* at *6.

As discussed above, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Wiggins v. Smith*, 539 U.S. 510, 540–41, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). This Court, in deferring to the Iowa courts, finds that Fisher has not presented clear and convincing evidence to rebut the Iowa courts' factual findings. The Iowa court's decision was not contrary to U.S. Supreme Court law nor did they unreasonably apply federal law to the facts of the case. The Iowa courts did not err in their fact-finding. In the absence of legal or factual error, Fisher's claim of ineffective assistance of trial counsel fails.

### B. Due Process Rights Under Brady v. Maryland

█ The prosecution violates a defendant's due process rights when it withholds exculpatory or impeachment evidence "material to [defendant's] guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence is material if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). If a defendant can show that the withheld evidence resulted in an untrustworthy conviction, "[r]eversal of a conviction is required." *Youngblood v. West Virginia*, 547 U.S. 867, 870, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006).

Fisher alleges that prosecutors violated his due process rights by withholding the report of Damon Nichols's sex abuse investigation. As discussed above, A.E. accused Nichols of sexual abuse. Fisher believes admission of the report would have cast doubts on A.E.'s credibility and therefore cast doubts on the validity of his conviction. Fisher bases his allegation on three facts: (1) he did not see the Nichols report until his post-conviction proceedings; (2) his trial counsel, Anders Johnson, testified

at the post-conviction hearing that he could not even recall who Damon Nichols was; (Appx. 188); and (3) the State could not recall whether it turned over the report. Fisher argues, "There is certainly nothing in the record indicating that the report *was* turned over, or that trial counsel ever tried to get in the Nichols' reports." (Pet. Br. at 18).

The Iowa Court of Appeals found "no affirmative evidence that the State failed to produce the reports in response to a defense request." *Id.* at *5. "At best, the record is simply bereft of evidence that any reports *were* provided defense counsel." *Id.* (emphasis added). While Fisher has shown some evidence casting doubt on whether the report was actually turned over, the evidence is not clear and convincing. The Court thus presumes that the Iowa court's fact-finding is correct.

■ Even if Fisher was able to show that prosecution withheld the evidence, he is not able to show prejudice. The Iowa court found that the reports are not material because they most likely would not be admitted into evidence. As discussed in Part V.A.1, Iowa's rape-shield laws prohibits the admission of prior sexual conduct unless it is a "prior false claim[ ] of sexual activity." *State v. Baker*, 679 N.W.2d 7, 10 (Iowa 2004); *see also* Iowa R. Evid. 5.412. The Iowa courts found that the claims were not false, and therefore inadmissible under the rape-shield laws. Fisher has not produced evidence to rebut the Iowa court's finding. Without introduction of the report, Fisher is unable to show to a "reasonable probability that, had the evidence been disclosed to the defense, the

result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375.

Fisher has proven neither that the evidence was withheld nor that the evidence was prejudicial. The Iowa courts did not reach a result contrary to, nor unreasonably applied, federal law.

## C. Ineffective Assistance of Appellate Counsel

Last, Fisher claims that his counsel on direct appeal, Dennis Hendrickson of the State Appellate Defender's Office, was ineffective. Fisher contends that Hendrickson's motion for withdrawal of counsel and accompanying brief violated *Anders v. California* in that he did not act "in the role of an active advocate on behalf of his client." *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Fisher argues, "His brief only describes why the issues are not any good rather than acting as an advocate on Mr. Fisher's behalf." (Pet. Br. at 27). Because of this incompetence, Fisher asserts that Hendrickson was unable to identify ineffective assistance of counsel claims. The Iowa Court of Appeals found that his motion and brief did not violate *Anders*.

Respondent contends that this is a state law issue not subject to review by this Court. "[T]he ruling is clearly based on an interpretation of state law (Appellate Rule 6.104) and Petitioner has not asserted a 'miscarriage of justice' or 'actual innocence.'" (Resp. Br. at 19). The Court finds, however, that the issue before it is not whether Iowa Rule of Appellate Procedure 6.104 complies with *Anders*,[5] but

5. Iowa Rule of Appellate Procedure 6.104(1) states,

> If counsel appointed to represent a convicted indigent defendant in an appeal to the supreme court is convinced after conscientious investigation of the entire record as defined in rule 6.10(1) that the appeal is frivolous and that counsel cannot, in good

conscience, proceed with the appeal, counsel may move the supreme court in writing to withdraw. The motion must be accompanied by a brief referring to anything in the record that might arguably support the appeal....

Iowa R.App. P. 6.104 (2008).

whether Hendrickson's brief violated *Anders*. On state court review and now on federal review, Fisher has not argued that Appellate Rule 6.104 was inconsistent with *Anders*. Rather, he argued Hendrickson violated *Anders*, regardless of whether he fulfilled the requirements of Rule 6.104. Fisher's present appeal asks this Court to determine whether the Iowa court's decision was contrary to, or an unreasonable application of *Anders v. California,* which is clearly established federal law. Therefore, it is appropriate for this Court to review this issue. This Court will not, however, review the Iowa Court of Appeal's determination that Rule 6.104 is consistent *Anders*.[6]

First, the Iowa court's decision was not contrary to federal law. The court did not come to a conclusion opposite to the Supreme Court on a question of law, nor did the court confront facts materially indistinguishable from *Anders* or other relevant precedent.[7] *See Williams,* 529 U.S. at 405, 120 S.Ct. 1495.

▆ Second, the Iowa court's decision was not an unreasonable application of federal law, as determined by the Supreme Court. A state-court ruling is an unreasonable application of federal law where (1) "the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case"; or (2) "a state-court decision . . . either unreasonably extends a legal principle from our precedent to a new context where its should not apply or unreasonably refuses to extend that principle to a new context where it should ap-

ply." *Williams,* 529 U.S. at 407, 120 S.Ct. 1495.

Here, the Iowa Court of Appeals identified the correct governing legal principles. Citing *Anders* and progeny, the Court articulated the principle that appellate counsel must "act in the role of an active advocate in behalf of his client," by "assur[ing] the court that the defendant's constitutional rights have not been violated." *Fisher,* 2007 WL 254905, at *4. The court explained that "[a] brief in support of a frivolous appeal motion is not inadequate merely because it discusses only why each issue lacks merit." *Id.* (internal citations omitted). Correctly identifying Supreme Court principles, the Iowa court then went on to find that the "standard had been met in this case." *Id.*

This Court finds that the Iowa court's conclusion was not unreasonable. The requirement that an attorney file an *Anders* brief "merely aim[s] to 'assure the court that the indigent defendant's constitutional rights have not been violated.'" *Smith v. Robbins,* 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (quoting *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 442, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988)). By filing such a brief, "referring to anything in the record which might arguably support the appeal," a reviewing court may better assess whether appellate counsel has fully reviewed their client's case before seeking withdraw on the basis that the appeal is frivolous. *Anders,* 386 U.S. at 744, 87 S.Ct. 1396.

---

6. The Iowa Court of Appeals stated, "First, we note rule 6.104, which was complied with in this case, mirrors the specific requirements set forth in *Anders." Fisher,* 2007 WL 254905, at *4.

7. The facts in *Anders* are distinguishable to those in this case. Anders' counsel failed to file *any* brief in support of his conclusion that

Anders's appeal was meritorious. His attorney admitted a short letter stating that the appeal lacked merit. Here, Fisher's appellate counsel filed a brief that discussed why the appeal lacked merit. Thus, the Iowa Court of Appeals's conclusion that Fisher's brief comported with *Anders* was not an opposite conclusion than a Supreme Court on similar facts.

■ The Supreme Court confronted a situation similar to the one here in *McCoy v. Court of Appeals of Wisconsin.* In *McCoy,* the appellant's counsel filed a brief explaining "why the appeal lacked merit," thus going beyond the requirement that counsel pointed out the ways in which the appeal might succeed on appeal. *McCoy,* 486 U.S. at 432, 108 S.Ct. 1895. The court held that counsel's brief did not violate the defendant's Sixth or Fourteenth Amendment rights.

> If an attorney can advise the court of his or her conclusion that an appeal is frivolous without impairment of the client's fundamental rights, it must follow that no constitutional deprivation occurs when the attorney explains the basis for that conclusion. A supported conclusion that the appeal is frivolous does not implicate Sixth or Fourteenth Amendment concerns to any greater extent than does a bald conclusion.

*Id.* at 443, 108 S.Ct. 1895. Here, Hendrickson went beyond what is constitutionally required and detailed why each issue would fail on appeal. It was not unreasonable for the Iowa Court of Appeals to hold that "[a] brief in support of a frivolous appeal motion is not inadequate merely because it discusses only why each issue lacks merit." *Fisher,* 2007 WL 254905, at *4. They did not unreasonably apply the Supreme Court precedent discussed above nor did they extend or fail to extend Supreme Court precedent where necessary.

Furthermore, Fisher failed to show prejudice. In order to succeed on an ineffective assistance of counsel claim, Fisher must show that his counsel's performance was deficient and such deficiency prejudiced him. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. To determine whether there is prejudice, the Court examines whether the result has been rendered "unreliable or fundamentally unfair" as the result of counsel's performance. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838,

122 L.Ed.2d 180 (1993); *West v. United States,* 994 F.2d 510, 513 (8th Cir.1993). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. *Id.* at 372, 113 S.Ct. 838; *West v. United States,* 994 F.2d 510, 513 (8th Cir.1993) (quoting *Fretwell* ). Fisher contends that his appellate counsel's ineffectiveness resulted in his failure "to identify successful claims of ineffective assistance of trial counsel." (Pet. Br. at 27). Specifically, Fisher argues that Hendrickson failed to identify an ineffective assistance of trial counsel claims. For the reasons discussed above in Parts V.A.1–3, trial counsel was not ineffective. Without being able to show ineffectiveness, Fisher cannot show that appellate counsel's alleged ineffectiveness prejudiced him. Accordingly, Fisher's ineffective assistance of counsel claim fails.

## V. CONCLUSION

The Court concludes that Fisher is not entitled to relief pursuant to 28 U.S.C. § 2254. The Iowa courts' adjudication of Fishers' claims neither resulted in a decision contrary to, nor an unreasonable application of clearly established federal law. Nor did the court's adjudication result in a decision based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Fisher's application for a writ of habeas corpus is denied. Fisher's Motion for Appointment of Counsel (Dkt. No. 15) is also denied. The Clerk of Court is directed to enter judgment in favor of the respondent.

Upon the foregoing,

**IT IS ORDERED**

That the Petitioner's May 15, 2007 Petition for Writ of Habeas Corpus (Dkt. No.

1) and January 28, 2008 Motion to Appoint Counsel (Dkt. No. 15) are denied.